Richard Stuart AUSTIN, Petitioner,

v.

Dr. J. D. HARRIS, Warden, Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 14411-4.

United States District Court
W. D. Missouri, W. D.

Feb. 6, 1964.

Richard Stuart Austin, pro se.

F. Russell Millin, U. S. Atty., by Herbert W. Titus, Sp. Asst. U. S. Atty., Kansas City, Mo., for respondent.

BECKER, District Judge.

This is a petition for a writ of *habeas corpus* filed by Richard Stuart Austin, presently imprisoned in the Medical Center for Federal Prisoners at Springfield, Missouri, pursuant to a three year sentence imposed on February 19, 1962, in the United States District Court for the Western District of Michigan after petitioner pleaded guilty to a charge of mailing obscene matter.

Upon receipt of the *habeas corpus* petition, an order to show cause was issued.

A return to the order was filed by respondent. Subsequently this Court entered an order directing petitioner to file a detailed statement of the facts allegedly supporting certain enumerated claims in his petition. Petitioner filed a response to this order, and the respondent filed a traverse of the response.

Considering all of petitioner's communications with this Court as a part of his petition, his claims may be summarized as follows:

1. He is presently sane and should be transferred to a "proper institution";

2. Officials of the Medical Center have illegally interfered with his mailing privileges;

3. He has been punished for composing a legal petition to his committing court in his cell and for exhibiting it to another inmate;

4. He has been subjected to cruel and unusual punishment;

5. His account has been charged with a fictitious legal fee;

6. He was not represented by counsel in the criminal proceedings before the United States District Court for the Western District of Michigan which culminated in the three year sentence which he is now serving.

Petitioner's claims will be considered in order.

Petitioner's first claim is that he is presently sane and is therefore improperly and illegally confined in the Medical Center. The response to the order to show cause filed on behalf of the respondent denies that petitioner has been restored to sanity or health.

The Court finds it unnecessary to resolve the issue of petitioner's sanity. The allegation that petitioner is sane and that he is confined in the Medical Center does not, in itself, state a claim upon which relief can be granted.

Title 18 U.S.C.A. § 4082, states:

"Persons convicted of an offense against the United States shall be committed * * * to the custody of the Attorney General of the

United States or his authorized representative, who shall designate the places of confinement where the sentences shall be served.

"The Attorney General may designate any available, suitable, and appropriate institutions * * *

"The Attorney General may order any inmate transferred from one institution to another."

The United States Court of Appeals for the Eighth Circuit has consistently held that whether a convicted prisoner is properly in the Medical Center is not a question for judicial determination. In Rosheisen v. Steele, 8 Cir., 193 F.2d 273, l. c. 275, that Court stated:

"Congress has confided to the Attorney General and the prison authorities, and not to the courts, the duty and responsibility of determining whether a federal prisoner is a suitable subject for confinement, care and treatment at the Medical Center, and what sort of medical care he needs. The administrative determination of such questions is not, in our opinion, subject to review in habeas corpus proceedings.

"It is to be noted that the Medical Center at Springfield, Missouri, is not exclusively an institution for the insane or for mentally defective federal prisoners. As the Act providing for it shows, Act of May 13, 1930, 46 Stat. 270, the institution was to be available to the Attorney General as a hospital for the care and treatment of federal prisoners 'who at the time of their conviction or during the time of their detention and/or confinement are or shall become insane, afflicted with an incurable or chronic degenerative disease, or so defective mentally or physically so [as] to require special medical care and treatment not available in an existing Federal institution.'"

Again in Garcia v. Steele, 8 Cir., 193 F.2d 276, l. c. 278, that Court stated:

"Whether a federal prisoner is a suitable subject for hospitalization at the Medical Center is, in our opinion, a question for the Attorney General and the prison authorities, and not for the courts. It is not conceivable to us that every inmate of the Medical Center who considers himself to be sane and ineligible for confinement in that institution, can, by asserting that to be the fact, require the District Court to conduct a hearing and investigation to determine whether the prisoner should be in the Medical Center or in some penitentiary or correctional institution."

The imprisonment of an allegedly sane convict in the Medical Center is treated from the viewpoint of cruel and unusual punishment under petitioner's fourth claim, *infra*.

■ Petitioner's second claim is that officials of the Medical Center have interfered with his mailing privileges. In response to the order of this Court that he file a detailed statement of the facts constituting interference with his mailing privileges referred to in his petition, petitioner stated:

"The refusal of allowing petitioner to answer the American Bar Association, which was returned to petitioner * * *. A letter mailed to William A. Wear, Atty., was returned to petitioner, marked Exhibit 2, and of which was removed by someone at this institution from a letter to this Honorable Court, and mailed to William A. Wear, Atty. Petitioner received an answer from Mr. Wear stating that he had received said letter * * *. Also, petitioner hasn't received any answers from the following Court correspondence to YOU * * * Bill of Information * * * answer to Respondent's Reply to Show Cause Order * * * Summary Judgment on Rule 56(58) * * * Summary Judgment on Rule 56(58) * * * inquiry on above * * * request of foreman of Grand Jury * * * inquiry on above mail to Commissioner * * * answer to 'Change of Respondent' Order." [Petitioner

concludes that since he received no return mail from the Court in response to the aforementioned correspondence the correspondence was intercepted by officials of the Medical Center and never received by the Court.]

In his original petition the petitioner stated that the letter written to the American Bar Association was returned to him by the officials of the Medical Center marked "Not Special Purpose Mail!" Federal penal institutions have the right to adopt regulations governing various classes of correspondence of convicts. And it is well established that under ordinary circumstances uniformly applied rules regulating the mailing privileges of inmates of federal penal institutions which are necessary to the orderly conduct of the institution do not violate any constitutional rights of the convicts. United States ex rel. Thompson v. Fay (S.D.N.Y.) 197 F.Supp. 855, l. c. 856; Petition of Smigelski (D.N.J.) 185 F. Supp. 283, l. c. 286–287; see also Price v. Johnston, 334 U.S. 266, l. c. 285, 68 S.Ct. 1049, at pages 1059–1060, 92 L.Ed. 1356. Despite repeated requests that petitioner file a detailed written statement of facts claimed to show unlawful interference with petitioner's mail, no facts have been stated which show the regulations in question to be invalid or their application to petitioner to be unlawful.

The letter to William A. Wear, Esquire, which petitioner contends was removed from his petition for writ of *habeas corpus* addressed to this Court and forwarded to Mr. Wear by officials of the Medical Center, is in fact attached as "Exhibit 2" to the original petition on file in this cause. Therefore the record conclusively shows that petitioner's claim in respect to this letter is unfounded.

The enumerated correspondence to this Court which petitioner contends was not received by the Court because he did not receive replies thereto from the Court was received by this Court and is now in the file in this cause. Therefore it conclusively appears from the file in this cause that petitioner's claim in respect to the correspondence with this Court is unfounded.

Petitioner's third claim is that he has been punished for doing legal work in his cell and for exhibiting the same to other inmates. This claim is not denied in the response to the order to show cause. Rather the response states that the regulations of the Medical Center preclude preparation of petitions, motions and other documents in legal form in the inmates' living quarters except in the case of prisoners confined to their cells. These same regulations also preclude inmates from serving each other as attorneys or assisting each other in the preparation of legal documents. The respondent contends that such regulations, a copy of which is attached to the response as Exhibit No. 2, are reasonable and not in violation of any Constitutional rights of the inmates. In this contention respondent is correct. Except in exceptional circumstances not here present the Courts will not interfere with uniformly applied institutional regulations governing the times and places for preparing legal papers or governing inter-inmate traffic in legal information or materials. See Price v. Johnston, 334 U. S. 266, l. c. 285, 68 S.Ct. 1049, at pages 1059–1060, 92 L.Ed. 1356; Tabor v. Hardwick (C.A.7) 224 F.2d 526; Siegel v. Ragen (C.A.7) 180 F.2d 785. No exceptional circumstances are alleged, therefore this claim is unfounded in law and in fact.

Petitioner's fourth claim is that he is being subjected to cruel and unusual punishment. In response to the order of this Court that he file a detailed statement of the facts constituting the cruel and unusual punishment referred to in his petition, petitioner stated:

"In December 1961, and after 6½ years study, petitioner was found 'Mentally Competent' by Dr. Phillips, Chief Psychiatrist for all of the institutions of the State of Michigan, and all of the members of his staff at Michigan State Prison at Jackson, Michigan. The present alleged crime took place 3 months before Dr. Phil-

lips' final decission [sic] of petitioner. Senior Judge Raymond W. Starr sentenced petitioner to the United States Medical Center just 2 months after the final decission [sic] of Dr. Phillips. Therefore it is Cruel and Unusual punishment for a sane man to be kept in a hospital of this type, let alone to have to spend 13 months of his 19 months in a detention unit. To be kept in this hospital without receiving any treatment of any kind, automatically constitutes Cruel and Unusual punishment."

An examination of the certified copy of the judgment and sentence attached to the response to the order to show cause discloses that on February 19, 1962, petitioner was committed to the custody of the Attorney General for confinement in an institution to be designated by him for a term of three years, with a recommendation that petitioner be sent to the Medical Center at Springfield. Petitioner's presence at the Medical Center shows that the Attorney General has implemented that recommendation.

Assuming the truth of petitioner's claim that he is sane, his detention at the United States Medical Center at Springfield, Missouri, does not constitute cruel and unusual punishment within the prohibition of the Eighth Amendment.

█ Historically the prohibition against cruel and unusual punishment in the Eighth Amendment referred to such punishment as amounted to torture, involved unnecessary cruelty or shocked the mind of the community, such, for instance, as drawing and quartering the culprit, burning him at the stake, cutting off his nose, ears or limbs, or disemboweling him. See Wilkerson v. State of Utah, 99 U.S. 130, 134–136, 25 L.Ed. 345. Later it was said that a punishment out of all proportion to the offense might bring it within the prohibition. See O'Neil v. Vermont, 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450. But it is now established that, apart from historical precedent, what constitutes cruel and unusual punishment within the prohibition of the Eighth Amendment is to be judged in the light of developing civilization, so that what might not have been cruel and unusual yesterday may well be so today. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793.

Judged in the light of present day standards it cannot be said that, assuming petitioner's sanity, his imprisonment pursuant to an exercise of the Attorney General's statutory discretion in the Springfield Medical Center, a hospital devoted in part to the housing and care of insane or mentally defective federal prisoners, amounts to torture, involves such unnecessary cruelty or so shocks the community conscience as to even approach the area of punishment proscribed by the Eighth Amendment. See Ex parte Pickens, 101 F.Supp. 285, 13 Alaska 477. Therefore the complaint of cruel and unusual treatment is unfounded in fact and in law.

█ Petitioner's next claim is that his confinement for 13 months in a detention unit constitutes cruel and unusual punishment. Petitioner defines a detention unit as a unit in which inmates are confined to their cells for sixteen hours each day, seven days a week. Page 3 of "Petitioner's Rebuttal to Respondent's Response to Petitioner's Detailed Statement of Facts," filed December 3, 1963. The statement of this contention without further discussion demonstrates its lack of merit.

Petitioner's claim that he has received no treatment of any kind while an inmate of the Medical Center is elaborated upon in "Petitioner's Rebuttal to Respondent's Response to Petitioner's Detailed Statement of Facts," filed December 3, 1963, at pages 4 and 5, as follows:

"Petitioner has a long-standing case of bone arthritis, which was originally diagnosed in 1957, in Michigan State Prison, for which Petitioner has continually required treatment. Petitioner, since arrival at this institution, has repeatedly requested further treatment for this condition. All of these requests have been refused without the most curso-

ry examination and in spite of the fact that Petitioner's records from Michigan State Prison clearly indicate the presence of this condition. This inattention to Petitioner's medical needs is serious enough in that Petitioner is forced to endure, for lack of treatment, a constant and considerable amount of pain and discomfort."

The respondent does not specifically respond to this contention but merely states "petitioner's treatment at the institution has been proper to the best of his knowledge, as is consistent with his status as a mental patient and a federal prisoner."

■■ It is true that the care, custody, control, treatment and discipline of federal prisoners in the Bureau of Prisons is under general supervision of the Attorney General and that the Courts will generally not interfere with the administration of this authority, Harris v. Settle (C.A.8) 322 F.2d 908, and cases therein cited. But there are those exceptional situations where a court will undertake to review the nature and conditions of a prisoner's otherwise lawful confinement. Harris v. Settle, supra, 322 F.2d at p. 910, citing, *inter alia*, Fulwood v. Clemmer (D.C.App.) 295 F.2d 171. In the Fulwood case, supra, the Court of Appeals for the District of Columbia reversed an order of the District Court denying a petitioner leave to file without prepayment of costs a petition purporting to seek relief in the nature of mandamus alleging in a vague and conclusory manner that petitioner was, among other things, denied needed medical attention because of his religion and because he had written a letter of protest to the Director of the District of Columbia Department of Corrections.

■ While petitioner does not allege that he has been singled out for special treatment in regard to the alleged deprival of medical care or that the denial of medical care is arbitrary or capricious, petitioner's allegations are sufficient to require further investigation on this issue. In order that "unlettered prisoners without friends or funds" may be protected, "legalistic requirements in examining applications" should be disregarded. Darr v. Burford, 339 U.S. 200, l. c. 203, 70 S.Ct. 587, at pages 589–590, 94 L.Ed. 761.

On this issue it will therefore be necessary to appoint counsel to assist petitioner and to afford such a hearing as may be required in view of such further reports and pleadings as may be filed.

■ Petitioner's fifth claim is that his account has been charged with a fictitious legal fee. Attached to the response to the order to show cause as Exhibit No. 1 is a copy of an agreement between William A. Wear, Esquire, a Springfield, Missouri, attorney, and petitioner, dated March 11, 1963. By the terms of this agreement petitioner agrees to pay $50.00 to Mr. Wear upon the rendering of certain professional services. Also attached as Exhibit No. 2 to the response is a copy of petitioner's institutional account which indicated that at the time of the agreement petitioner had only $1.80 to his credit, and has since withdrawn 56¢, leaving a balance of $1.24. This account has been marked "Freeze all Funds to pay Attorney's Fee of 50.00." The response states:

"The Commissary Department has flagged his account to 'freeze' his funds to pay the attorney's fee in accordance with Austin's contract should such funds be entered, and the staff does not allow him to use his funds for other purposes as long as that debt is outstanding."

Petitioner does not deny, and in fact admits, the correctness of respondent's Exhibits No. 1 and 2. On this state of the record the Court finds that plaintiff's fifth claim involves a question of routine prison administration with which the Court will not interfere under ordinary circumstances, such as these, whatever the Court may think of the wisdom of the practice. Harris v. Settle (C.A.8) 322 F.2d 908, and cases therein cited. Therefore upon this record, this claim is unfounded in fact and in law.

Petitioner's sixth claim is that he was denied counsel in the criminal proceedings before the United States District Court for the Western District of Michigan which culminated in the three year sentence which he is now serving. Attached to the response to the order to show cause is a certified copy of the judgment and commitment entered in the United States District Court for the Western District of Michigan on February 19, 1962, in the case of United States v. Austin, No. 6802. That order recites in part:

" * * * and said defendant having been convicted on his plea of guilty of the charge in the indictment herein, after there having been filed by said defendant a waiver of counsel * * *."

In response to the order of this Court that he file a detailed statement of the facts constituting the denial of right to counsel at the criminal proceeding in the United States District Court for the Western District of Michigan referred to in his petition, setting forth whether he had refused services of counsel in that Court, petitioner made no direct response.

In response to inquiry as to whether petitioner had raised this claim of denial of right to counsel in the sentencing court, petitioner stated "Claim has been raised in petition for a New Trial." Petitioner also forwarded to the Court without further explanation an undated document styled:

"UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CINCINNATI 2, OHIO

RICHARD STUART AUSTIN,
              Petitioner,

vs

UNITED STATES OF AMERICA,
              Defendant.

DOCKET NO.

APPEAL

an application for NEW TRIAL and writ of Habeas Corpus pursuant to Section 2255, Title, 28, U.S.Code * * *."

Petitioner has not informed the Court whether or not this document was ever filed or, if so, what, if any, disposition was made of it.

At page 5 of the last mentioned document. the following appears:

"24. On June 22, 1963, petitioner received acknowledgment from the Clerk of the Court in Grand Rapids, Michigan, on the Motion petitioner mailed on May 3, 1963, stating, 'Motion to Vacate Sentence for a New Trial was received in this office and *filed* on May 10, 1963. * * *

"25. Petitioner has mailed 6 letters and 4 Bills of Information to the above named Court of the following dates and has received NO answers: 6/7/63, 6/26/63, 7/24/63, 8/2/63, 8/13/63, 9/10/63, and 9/18/63. The Bill of Information dated June 7, 1963, contained the New Evidence. The Bill of Information dated June 26, 1963, was in answer to the U. S. Attorney's reasons why petitioner's motion should be denied."

With the record in this state the Court finds that it should not entertain this petition for writ of *habeas corpus* on this latter ground at this time.

Section 2255 of Title 28 U.S.C.A. provides that:

"A prisoner in custody under sentence of a court established by Act

of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

That section further provides that:

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

And as stated in the case of United States v. Hayman, 342 U.S. 205, l. c. 223 at n. 40, 72 S.Ct. 263, at page 274, 96 L.Ed. 232:

"If Section 2255 had not expressly required that the extraordinary remedy of habeas corpus be withheld pending resort to established procedures providing the same relief, the same result would have followed under our decisions. [Citing cases.]"

On the record in this case it would be virtually impossible to show that petitioner's remedy by motion under section 2255 is inadequate and ineffective. This is particularly true in light of the recent opinion of the United States Supreme Court in the case of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L. Ed.2d 148, making it abundantly clear that conventional motions of finality, *res judicata* and discretionary refusal to grant a hearing have been rejected in § 2255 cases, and that the remedy provided by section 2255 is as broad as *habeas corpus*. Therefore the section 2255 remedy is adequate and available, and has not been exhausted or frustrated.

It is therefore

Ordered that the petition for writ of *habeas corpus* on file herein be, and the same is hereby, denied on all grounds asserted except the claim that petitioner has been denied needed medical care. It is further

Ordered that William A. Wear, Esquire, a member of the bar of this Court be, and he is hereby, appointed to represent petitioner in the prosecution of this petition on the remaining ground. It is further

Ordered that William A. Wear, Esquire, confer with petitioner and the officials of the Springfield Medical Center and inspect the records of said Medical Center which pertain to the state of petitioner's health and the medical treatment he has received and is receiving, and file with the Clerk of Court within 30 days from the filing of this order a written statement of his findings together with such further pleadings as he deems appropriate. It is further

Ordered that the officials of the said Medical Center make available for Mr. Wear's inspection and copying, if necessary, all records under their custody or control which pertain to the state of petitioner's health and his examination and treatment in said institution. It is further

Ordered that William A. Wear, Esquire, be, and he is hereby, granted leave to file within 30 days from the filing of this order an amended petition setting forth any additional grounds for relief which he may discover.

Upon the filing of Mr. Wear's report the Court will enter an appropriate order either dismissing the petition on the remaining ground(s), directing a response by the respondent, or setting this cause for a hearing.