Howard L. RAMSEY, Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 17784-3.

United States District Court,
W. D. Missouri, W. D.

Feb. 16, 1970.
Addendum March 2, 1970.

Howard L. Ramsey, pro se.

Bert C. Hurn, U.S. Atty., by Frederick O. Griffin, Jr., Asst. U.S. Atty., Kansas City, Mo., for respondent.

## ORDER DENYING PETITION FOR HABEAS CORPUS

BECKER, Chief Judge.

Petitioner, a federal convict confined in the United States Medical Center for Federal Prisoners, petitions this Court for a writ of habeas corpus to relieve him of certain conditions of confinement which he alleges that he is currently suffering. Leave to proceed in forma pauperis has been previously granted.

Petitioner states that he was convicted by a jury in the United States District Court for the Eastern District of Missouri of causing a falsely made, forged and counterfeited check to be transported in interstate commerce; that he was sentenced on that conviction on December 20, 1963, to a term of two and one-half years' imprisonment; that he appealed the judgment of conviction and imposition of sentence, but that they were affirmed on appeal; that he later filed a motion to vacate sentence under Section 2255, Title 28, U.S.C., in the sentencing court, which was denied; that he appealed the denial to the United States Court of Appeals for the Eighth Circuit, which affirmed the denial on

September 24, 1965 (Ramsey v. United States (C.A. 8) 351 F.2d 31); and that he was represented by counsel at his arraignment and plea, trial, sentencing and on appeal.

Petitioner states as grounds for his contention that his confinement is currently in violation of his federally protected rights (1) that he has been denied the assistance of counsel while in the Medical Center, contrary to the rule of Johnson v. Avery, 393 U.S. 483, 89 S. Ct. 747, 21 L.Ed.2d 718; (2) that respondent is subjecting him to certain medical treatment which is impairing petitioner's health; and (3) that petitioner is being denied "equal protection of the laws" in that prisoners with "camp numbers" are given preferential treatment.

As facts supporting his allegations, petitioner states that he wrote to John Kane, Esquire, the attorney assigned as a preliminary legal consultant for Medical Center prisoners and inmates, in the first week of September 1969; that he thereupon received an unsigned receipt, saying that he would see Mr. Kane as soon as possible; that, as of the date of the filing of the petition herein, Mr. Kane has not yet contacted petitioner; that such delay constitutes the effective denial of all legal assistance, since by the policy statements of the Medical Center, petitioner is prohibited from seeking legal assistance from other inmates; that Dr. John R. Kluge gave petitioner "glucose of sugar and water" 24 hours a day continuously for two weeks, and orange juice with sugar added; that Dr. Kluge "knew sugar on a continuous flow is harmful for a person with hypoclocemia (sic)"; that petitioner's health was impaired thereby; and that "camp workers" receive good time credit and pay, but petitioner, who works the same hours in the same place and at the same job, has been denied "meritorious good days" and pay.

The show cause order was issued herein on December 12, 1969. Respondent's response was filed on December 16, 1969, stating that one of Mr. Kane's assistants had attempted to see petitioner on November 13, 1969, but petitioner refused to accept any consultation from him; that Mr. Kane thereafter referred petitioner's file to the UMKC Legal Assistance Program "in the thought that there perhaps existed a personality problem"; and that petitioner was not currently assigned to the prison camp and that such assignment, furthermore, was in the discretion of the attorney general.

Before petitioner could be ordered to file a traverse to that response, this cause was transferred to Division 2 of this Court for a plenary evidentiary hearing on the question of denial of legal assistance. Thereafter, on December 23, 1969, a hearing on that issue was held before the Honorable William R. Collinson of that division. As a result of that hearing, Judge Collinson found that the program of legal assistance being offered at the Medical Center, at the date of the hearing, met the standards of Johnson v. Avery, supra, in that it was an effective "reasonable alternative" to inmate legal assistance. Judge Collinson further found that some delay was characteristic of the early stages of the legal assistance program (after its institution in the spring and summer of 1969) resulting from the backlog of demand for legal assistance which had been building up prior to the institution of the program; that such delay was not excessive under the circumstances; and that current periods of delay were progressively shorter. Furthermore, during the pendency of Judge Collinson's decision, Mr. Kane made vigorous efforts in this Court in behalf of petitioner's request for relief in respect of his allegations of improper or inadequate medical treatment. Petitioner's complaints of inadequate legal assistance are therefore without merit.

With respect to petitioner's complaints of improper or inadequate medical treatment, this Court required a supplemental response from the respondent by letter of January 21, 1970, in which respondent was requested to furnish an opinion of one of the regular outside con-

sultants to the Medical Center. Respondent responded by letter received in this division on February 4, 1970, to the following effect:

"In answer to your letter of January 21, 1970 requesting information on the medical treatment of Mr. Howard Lawrence Ramsey, our register number 17493–H, Dr. Seal, our Chief of Medicine here at the Medical Center, has provided me with the following information.

"At this point in time Mr. Howard Ramsey, a 39 year old white male, has been thoroughly investigated for the symptoms of hypoglycemia. It has been determined that he is suffering from reactive hypoglycemia and chemical diabetes mellitus. Pancreatic tumor has been excluded by a very thorough investigation. On Thursday morning, January 29, 1970, Mr. Ramsey was seen by our metabolic consultant from the City of Springfield Dr. Donald K. Back, who concurred with the above diagnosis. Both Dr. Back and Dr. Seal explained to the patient what his diagnosis is and the implications of this diagnosis, namely, that it is an early manifestation of diabetes mellitus. The patient was advised at that time that treatment for his condition is a weight reducing multiple feeding diabetic diet. Mr. Ramsey had already been advised on this diet by our dietician and appears to understand how to follow the diet as well as the need for it. Indeed, he has lost approximately five pounds in the last several weeks. It is hoped that on this diet and with normalization of his weight, that his chemical diabetes and reactive hypoglycemia may disappear. However, only time will tell whether this will happen.

"Now regarding the use of intravenous glucose for a patient with this condition Dr. Seal gave me the following facts.

'The patient received intravenous glucose only on his admission to the hospital because his physician was quite correctly concerned, on becoming familiar with the patient's prior history, about dangerously low levels of the blood sugar. It was only after the patient was able to be observed for several days and our own data and information collected on the patient that it was felt safe to take him off of intravenous glucose. And indeed he has not been on intravenous glucose for treatment for the past four to five months. The patient has been advised, however, to carry some candy or other ready source of sugar with him to prevent the disturbing symptoms of hypoglycemia which may occur approximately four hours after a meal in this kind if a situation.' "

Thereafter, petitioner submitted a letter relating to the facts reported in respondent's above letter and also a "motion for findings of fact and conclusions of law", asking for the immediate entry of final judgment herein. In his letter traversing the supplemental response, petitioner admits that he has been examined by an outside consultant of the Medical Center staff and that "he has made things a lot clear"; that "I just hope I can follow the diet untill (sic) I get out in 68 days, then I know I will be able too (sic)"; but that he still contests the validity of Dr. Kluge's original diagnosis and his initial administration of the glucose. Petitioner does not disagree with the diagnosis of diabetes mellitus and hypoglycemia, nor does he assert any disagreement with the current course of treatment which he is receiving. Further, petitioner states, in his motion for immediate judgment, that "there is no availability of such dietary or medical requirements [as he purports to need] in this institution" and that the disease is "possibly incurable." These allegations are consistent with the opinions of the treating physicians that for 4 or 5 months petitioner has been afforded the best treatment possible, is no longer being administered glucose (of which he originally, specifically complained in the petition herein) but that

he is urged to keep a source of sugar on hand for emergencies; and that it is "hoped" that the condition will eventually disappear.

 From the foregoing, it does not appear that petitioner states any claim of a continuing denial of a federally protected right to justify this Court in issuing a writ of habeas corpus. Habeas corpus is available to challenge the conditions of one's confinement. Harris v. Harris (W.D.Mo.) 222 F.Supp. 918; In re Baptista (W.D.Mo.) 206 F.Supp. 288. But, by virtue of Section 4042 of Title 18, United States Code, the care, custody, control, discipline and treatment of federal prisoners is committed to the exclusive discretion of the Attorney General or his authorized delegate. The exercise of that discretion will not be reviewed in the courts in the absence of the denial of a federally protected right or other exceptional circumstances. Harris v. Settle (C.A. 8) 322 F.2d 908, cert. den. 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179; Austin v. Harris (W.D. Mo.) 226 F.Supp. 304; Edmundson v. Harris (W.D.Mo.) 239 F.Supp. 359; Sutton v. Ciccone (W.D.Mo.) 292 F. Supp. 374. Improper or inadequate medical treatment, in order to constitute cruel and unusual punishment within the prohibition of the Eighth Amendment to the United States Constitution, must be continuing, must not be supported by any competent, recognized school of medical practice and must amount to a denial of needed medical treatment. See In re Baptista, supra. Petitioner does not, and could not, contend in this case that the current course of his treatment is not sanctioned by a competent school of medical opinion when the outside consultant and the Medical Center physicians are in unanimous agreement that the current diagnosis and course of treatment are correct. Further, for any damage the possibly negligent former administration of glucose might have done, petitioner's proper remedy is not in habeas corpus, but in an action for damages based on alleged malpractice under applicable state law. Petitioner

does not therefore raise the issue of the violation of a federally protected right in this regard.

 Further, petitioner's allegation that he should receive equal treatment with "camp" prisoners does not state any violation of his federally protected rights. The Attorney General is authorized to institute and regulate such prison camps under Section 4125 of Title 18, U.S.C. Subsection (e) of that same section states that "All other laws of the United States relating to the imprisonment, transfer, control, discipline, escape, release of, or in any way affecting prisoners, shall apply to prisoners transferred to such camps." Section 4082 of the same title, in turn, grants exclusive discretion in the matter of determination of place of confinement to the Attorney General. Further, the earning of meritorious pay and good time allowances for prison work is generally deemed a "privilege" rather than a "right", the according of which to some and denial to others could not in any way constitute a denial of equal treatment. This final allegation is therefore without merit as a contention in federal habeas corpus.

In view of the foregoing, all of petitioner's grounds for relief in habeas corpus are without merit and the petition for habeas corpus should accordingly be denied.

It is therefore

Ordered that the petition herein for habeas corpus be, and it is hereby, denied.

## ADDENDUM

*The Federal Constitutional Right of a Prisoner to Needed Medical Treatment*

 The following principles apply to convicted prisoners (and also to unconvicted prisoners who generally have greater rights than convicted prisoners):

(1) A prisoner in need of medical treatment (including medical attention and surgical treatment) cannot, without

leave and assistance of his keepers, at will go to a public or private facility to secure the treatment and cannot at will call in a practitioner to treat him in prison. (If he is indigent he might not be able to secure medical treatment in or out of prison with leave of his keepers.) Having custody of the prisoner's body and control of the prisoner's access to medical treatment, the prison authorities have a duty to provide needed medical attention. For example see 72 C.J.S. Prisons § 11 Note 41. See also Talley v. Stephens (E.D.Ark.) 247 F.Supp. 683, cited in Jackson v. Bishop (C.A. 8) 404 F.2d 571, 572. This duty is recognized in state and federal statutes and administrative prison regulations. (In the case of the United States Medical Center for Federal Prisoners the furnishing of needed medical and surgical care is the prime reason for its existence.) In addition to these statutory and administrative duties there is a constitutional duty to provide needed medical treatment to a prisoner because the *intentional* denial to a prisoner of *needed* medical treatment is cruel and unusual punishment, and violates the 8th amendment to the Constitution of the United States.

(2) If proposition of paragraph (1) above is accepted then it is an easy mental step to the proposition that reckless disregard, callous inattention and gross negligence which results in denial of needed medical treatment is equivalent to intentional denial of medical treatment, and therefore violates the rights guaranteed by the 8th amendment.

(3) The failure to provide needed medical treatment resulting from simple negligence is not a violation of the 8th amendment or any other provision of the Constitution of the United States, because there is no constitutional guaranty that prisoners shall not be injured as a result of simple negligence. Injury to a prisoner from simple negligence is an apparently unavoidable frequent occurrence of life, which is not considered cruel and unusual punishment. Such an injury is, however, a tort and remediable as such under applicable tort law.

(4) When medical treatment is furnished, but causes injury as a result of simple negligence it is not cruel and unusual punishment in the absence of exceptional circumstances. It is, however, a tort and remediable as such under general tort law. Attention is invited to the exception contained in the phrase "in the absence of exceptional circumstances." This would except treatment causing unusual pain, mental suffering, which was not considered appropriate by any recognized branch of the healing arts. It is negligence (malpractice) to subject a patient to such treatment without his consent. Even though the treatment is unusually painful, or causes unusual mental suffering, it may be administered to a prisoner without his consent if it is recognized as appropriate by recognized medical authority or authorities. See Anderson v. Kennedy (W.D. Mo.) Civil Action No. 14099–4.

(5) Damages caused by medical treatment resulting from reckless disregard, callous inattention, or gross negligence would, under the principles of paragraph (4) above, be regarded as the equivalent of damage intentionally inflicted. Therefore, it would be cruel and unusual punishment violating the 8th amendment. N.B. It should be noted that the phrase "needed" medical treatment is used. The requirement of necessity excludes desirable or wanted but not needed medical treatment.

*The Remedies For Denial of Needed Medical Treatment or Wrongful Medical Treatment Which Constitute Cruel and Unusual Treatment*

 The remedies of a prisoner ordinarily suggested for denial of needed medical treatment or administration of wrongful medical treatment in violation of the Constitution are:

(a) suit for damages;

(b) habeas corpus;

(c) suit for injunction; and

(d) suit for declaratory judgment.

For the purpose of considering propriety of these remedies, the wrongs

complained of should be divided into two classes as follows: (a) past conditions of confinement, i. e., wrongs of the past no longer continuing (nor probably recurring); and (b) current conditions of confinement, i. e., wrongs continuing or probably recurring. Hereinafter the terms in the above senses "past conditions of confinement" and "current conditions of confinement" will be used in the interest of brevity.

#### Past Conditions of Confinement

(6) Since past conditions of confinement cannot be retroactively rectified, restrained or enjoined, the only judicial remedy available is a suit for damages. Neither habeas corpus, nor suit for an injunction is available. The only remedy is at law for damages or declaratory judgment. In these circumstances a suit for declaratory judgment is ordinarily not a practical remedy, so the suit for damages is the preferred remedy for past conditions of confinement.

#### Current Conditions of Confinement

(7) In the modern view *habeas corpus* will be to correct unconstitutional (and perhaps otherwise illegal) conditions of confinement. In re Baptista (W.D.Mo.) 206 F.Supp. 288, and cases therein cited. This summary remedy to relieve *now* the unconstitutional conditions is the preferred remedy. It is not encumbered by the deliberate processes of civil procedure not designed, like habeas corpus, to solve immediate problems quickly. Urgent circumstances can be imagined that a conventional civil suit for injunction could not efficiently provide a remedy summarily or economically. It is not intended to say that there are many of these cases with merit. In fact there are hardly any. But a very few are enough to require attention of those stating a claim for relief which prove to be unfounded or frivolous.

(8) Compared to habeas corpus a *suit for injunction* to correct current conditions of confinement, is a ponderous procedure requiring (a) service of process; (b) hearing on a motion for a restraining order; (c) hearing on a motion for preliminary injunction; and (d) hearing and final judgment. To handle quickly numerous prisoner complaints by suits for injunction, and to process the conventional docket also presents a very difficult task in this district.

(9) Section 2255, Title 28, U.S.C., is not applicable in any of the circumstances stated above because:

(a) Section 2255 is available only to a prisoner "claiming the right to be released" upon the grounds (a) that the sentence was imposed in violation of the Constitution or laws of the United States; or (b) that the Court was without jurisdiction to impose the sentence; or (c) that the sentence was in excess of the authorized maximum; or (d) the sentence is otherwise subject to collateral attack. None of these grounds include unlawful "conditions of confinement" past or existing.

(b) Section 2255 is not available to the unconvicted. Pavlick v. Settle (W.D. Mo.) 203 F.Supp. 42.