Aaron BLACK, Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 18776–3.

United States District Court,
W. D. Missouri, W. D.

Dec. 21, 1970.

Aaron Black, pro se.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Western District of Missouri, Kansas City, Mo., for respondent.

## JUDGMENT DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

BECKER, Chief Judge.

Petitioner, a federal convict confined in the United States Medical Center for Federal Prisoners, has petitioned this Court for a writ of habeas corpus to alleviate certain of the conditions of his confinement. Petitioner also requests leave to proceed in forma pauperis. Leave to proceed in forma pauperis has been granted previously.

Petitioner states that he was convicted in the United States District Court for the District of New Jersey of a violation of Section 2113, Title 18, United States Code (bank robbery and incidental crimes); that he was sentenced on that conviction in March 1968 to a term of ten years' imprisonment; that he did not appeal from the judgment of conviction or imposition of sentence; that he has made no previous motions, petitions or applications in respect to this conviction and sentence; and that he was represented by counsel at his arraignment and plea, at his trial and at his sentencing.

Petitioner states the following as grounds for his contention that the conditions of his confinement violate his federally protected rights:

"Petitioner bases his grounds for release on cruel and inhuman punishment, also petitioner is being dealt with prejudice, discrimination, manace (sic) and threats and this is in violation of petitioner's 1st and 8th Amendments of the United States Constitution and also embraces the 14th Amendment under the Equal Protection Clauses. * * *

"Petitioner arrived at the United States Medical Center for Federal Prisoners, at Springfield, Missouri in the month of Sept. 1970, for an operation on his hip bones, upon arriving here, petitioner went to work in the institutional barber shop, for the respondent has a Policy Statement compelling that all Federal Prisoners will work regardless of consequences.

"Petitioner's condition is not getting any better in fact his condition is getting worse, petitioner would like to point out at this time, that he has not seen any specialist yet, and furthermore it doesn't look like he will get his medical problem solved if petitioner refuses to work, even in his deteriorating condition, disciplinary action will be taken and also good days taken, and petitioner will be put in solitary confinement this is surely cruel and inhuman punishment. See State v. Diver [Driver] 78 N.C. 423; In Re Kennedy [Kemmler], 136 U.S. 436, 10 [S.]Ct. 930, 34 L.Ed. 519. Sustor [Sustar]. v. County Court of Marion County, 101 Or. 657, 201 P. 445, 448.

"On or about Oct. 15, 1970, petitioner moved from 3–I–W to 3–2–W, upon arriving on the ward petitioner asked officer Mr. Lee if he could have one of several single rooms, Mr. Lee told petitioner he'd have to wait, petitioner then thought nothing more about it.

"George Newlins another inmate approached petitioner and asked petitioner if he got a single room, as I was explaining the situation to Mr. Newlins, Mr. Lee overheard are (sic) conversation, I was telling Mr. Newlins it appears to me, that I wouldn't get a single room, when Mr. Lee heard are (sic) conversation he flared up and said: '*If I keep talking, I won't be here to worry about a single room.*' (Emphasis petitioner's.)

"By Mr. Lee flaring up he has shown guilt beyond a reasonable doubt so therefore he has also shown prejudice, discrimination and now my life is in jeopardy. See Tegeler v. State, 130 P. 1164, 1167, 9 Okl.Cr. 138; Taylor v. F. W. Woolworth Co., 146 Kan. 841, 73 P.2d 1102, 1103. Franchise Motor Freight Ass'n v. Seavey, 196 Cal. 77, 235 P. 1000, 1002. Mische v. Kaminski, 127 Pa.Super. 66, 193 A. 410, 416; Board of [County] Com'rs of Huron County v. State ex rel.

Clarke, 127 Ohio St. 341, 188 N.E. 551, 552."

Because, viewed liberally in favor of petitioner in accordance with the rule of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, the petition might thereby have stated the denial of one or more of petitioner's federal rights, the show cause order of this Court was issued on October 28, 1970, directing respondent to show cause within 20 days why the writ of habeas corpus should not issue. Further, after the service and filing of the first response, respondent was granted leave to file a supplemental response on December 15, 1970. The substance of the responses is as follows. Respondent stated that petitioner had been sentenced by the United States District Court for the District of New Jersey to a term of ten years' imprisonment under the provisions of Section 4208(a) (2), Title 18, United States Code, after a plea of guilty to a charge of bank robbery; that his ward assignment was accomplished "as the result of a population re-alignment ordered by the Doctors of the Medical/Surgical Service"; that Senior Officer Lee, according to his statement, later on the day of the room assignment "entered the nineteen man dormitory and observed that Black had an audience of several other inmates [and] was loudly proclaiming and alleging that discrimination and prejudice had been shown toward him while at this institution [and] his attitude, comments and volume of his voice at the time was (sic) such as to create a disturbance"; and that therefore Mr. Lee "counselled with Black regarding the fact that his comments, attitude, and actions were not appropriate." In his traverse, petitioner traversed these allegations directly, contending that Mr. Lee's statement "is in fact *false* and an outright lie." (Emphasis petitioner's.)

With respect to petitioner's contentions regarding his medical condition, respondent submitted the affidavits of Jonathan E. Rhoads, Jr., M.D., Chief of Surgery in the Medical Center, dated November 30, 1970, and November 4, 1970. In the affidavits, Dr. Rhoads stated that petitioner was currently suffering from "Perthe's Disease (asceptic necrosis of the femoral head) bilaterally"; that "He complains of pain in both hips and groin areas" and "does have some limitation of motion of his legs at the hip" although "It is not severe"; that "Currently he is not receiving an active treatment program" because "According to our orthopedic surgical consultant his disease is not sufficiently far progressed to require surgery, [and] physical therapy has little to offer this man" although "He may take such analgesic medication as acetylsalicylic acid which is available on demand at the ward office" and additional pain medication by consulting the physician at sick call; and that, although petitioner "has not yet seen an orthopedic surgeon at Springfield * * * petitioner will see an orthopedic surgeon in the near future." With respect to petitioner's current work assignment, Dr. Rhoads states as follows:

"Our records indicate that his current job assignment is in the barber shop, presumably cutting hair. In my opinion this is not an ideal assignment for a man with this sort of hip disease. However I would expect him to undertake whatever steps were necessary to correct his work assignment if it did not agree with him. Specifically he should (1) fill out a request for job change form and go through proper channels. (2) That failing, he can petition any of a number of officials of the institution; the ward physician, the lieutenant, the case worker, the supervisor of job assignments, the Executive Associate Director, the Clinical Director, and the Director. In his case, had he come to sick call and requested a job change saying that cutting hair was too hard on his hips, I am sure we could have found something more agreeable.

* * * * * *

"The petitioner states that he is forced to work although his condition is getting worse and he is afraid disciplinary action will be taken and good days

taken from him and he be placed in solitary confinement if he refuses to work. His fears are to some extent realistic on the one hand, on the other hand if he complained to me at sick call I would make arrangements to take him off his work or to find him a job that he was physically able to tolerate."

In the latter of his two affidavits, that of November 30, 1970, Dr. Rhoads further states that petitioner had been examined by an orthopedic surgeon on November 4, 1970:

" * * * who felt that the man is 'Able to be up and around, walk quite well with a good gait and have a satisfactory range of motion of his hips * * * he should have surgery only when he has become more incapacitated and is not able to take care of his activities and carry on with minimal function, * * *.' "

From the foregoing, it is apparent that relief in habeas corpus should be accorded petitioner in respect to his complaint of being forced to work in a way which is detrimental to his physical health and otherwise denied. Habeas corpus is the proper remedy by which to challenge the legality or constitutionality, or both, of the conditions of one's confinement and the place of confinement. In re Bonner, 151 U.S. 242, 14 S. Ct. 323, 38 L.Ed. 149; Harris v. Settle (C.A. 8) 322 F.2d 908, cert. den. 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179; Hudson v. Hardy (C.A.D.C.) 424 F.2d 854, 855, n. 3, and cases therein cited; Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415, 419–420; Sutton v. Ciccone (W.D.Mo.) 292 F.Supp. 374, and cases therein cited; In re Baptista (W. D.Mo.) 206 F.Supp. 288. But the care, custody, control, discipline and treatment of prisoners, and the place of their confinement are all confided to the discretion of the Attorney General or his authorized delegate under the provisions of Sections 4042 and 4082 of Title 18, United States Code. In the absence of exceptional circumstances or the violation of a federal constitutional or statutory right, the Courts will not undertake to review the exercise of that discretion. Harris v. Settle, *supra*; Austin v. Harris (W.D.Mo.) 226 F.Supp. 304. It is readily apparent from the petition, the responses to the show cause order and the traverse thereof that petitioner's change of room assignment did not involve the denial of any federal right. Petitioner makes no statements, explicitly or implicitly, that it did. He complains of his being threatened by Officer Lee. Even assuming petitioner's allegations to be true, however, they do not state any claim of the denial of any federal right. The words imputed by petitioner to Officer Lee do not imply any threat of punishment, but only that of possible removal to another place within the Medical Center, an action which ordinarily, under the foregoing authorities, would not be the denial of any federal right. Petitioner cites cases apparently pointing out that similar actions or words have been considered as civil assaults under various State laws. But that is hardly the case at bar, wherein no punishment was imposed, according to petitioner's own allegations, nor any actual threat may be inferred from petitioner's allegations. See Reynolds v. Swenson (W.D.Mo.) 313 F.Supp. 328.

Further, the uncontradicted affidavits of Dr. Rhoads, containing the report of the examination of the orthopedic surgeon, establish that petitioner's hip condition does not warrant an operation at the present time. Even if the opinions of Dr. Rhoads and the examining surgeon are erroneous, their liability to petitioner is not by way of an extraordinary writ of habeas corpus compelling them to undertake the operation on petitioner's hip. By their attendance on petitioner to examine him and to render a diagnosis as recited above, they have satisfied the federal standards which require that a federal prisoner not be subjected to intentional (or reckless and callous) denial of needed medical treatment. See Ramsey v. Ciccone (W.D.Mo.) 310 F.Supp. 600, 605. The remedy for their

possible improper or inadequate diagnosis, rather, is by an action under State law in the State courts:

> "The failure to provide needed medical treatment resulting from simple negligence is not a violation of the 8th amendment or any other provision of the Constitution of the United States, because there is no constitutional guaranty that prisoners shall not be injured as a result of simple negligence. Injury to a prisoner from simple negligence is an apparently unavoidable frequent occurrence of life, which is not considered cruel and unusual punishment. Such an injury is, however, a tort and remediable as such under applicable tort law." Ramsey v. Ciccone, *supra*, at 605.

Petitioner's claim of the denial of needed medical treatment in that he has been denied an operation on his hip is therefore without merit and must be denied.

■ Petitioner should be granted relief, however, from being forced to continue working in the barber shop. Respondent has admitted that such is deleterious to his health. "[W]ork and labor on the part of [convicted] prisoners is not in itself unconstitutional or unlawful." Wilson v. Kelley (N.D.Ga.) 294 F.Supp. 1005, 1012. But when the type of work to which the convict is assigned admittedly worsens a pathological condition, such work must be deemed cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution, when the work has been assigned with knowledge of the condition and that it will be worsened thereby or when it has been continued with the same knowledge. In the case at bar, respondent, in the supplemental response, through the affidavits of Dr. Rhoads, has admitted that continued labor in the barber shop will be deleterious to petitioner's physical condition. Yet, no action has been taken to terminate this work assignment and grant petitioner a work assignment which would be compatible with his health. If not changed, continuance in this work assignment may become tantamount to the "reckless disregard, callous inattention and gross negligence which [in this respect] results in denial of medical [attention]." See Ramsey v. Ciccone, *supra*, 310 F.Supp. at 605. Respondent suggests that the relief would have been accorded if petitioner had brought the subject of his employment to the attention of respondent or his authorized delegates. But petitioner's right to be free of cruel and unusual punishment in this case cannot be conditioned on his having requested relief. This petition should be treated as a request for relief. Whether there is a well-defined or recognized, established administrative remedy by which petitioner might have brought the wish to terminate his barber shop employment to the attention of the Medical Center is immaterial. Petitioner's wishes are now evident. The petition and the show cause order in this case brought the condition to the attention of the respondent, as did the examination of November 4, 1970. By the same means, petitioner's wish in this regard was made known to respondent. The affidavits of Dr. Rhoads show his awareness of petitioner's condition and that his job assignment was not, under the circumstances, conducive to his health. Therefore, petitioner should be granted relief in respect of this complaint and respondent should terminate petitioner's employment in the barber shop and should grant petitioner an opportunity to be employed at a task more suitable to his physical condition. For the foregoing reasons, it is

Adjudged that the petition herein for habeas corpus be, and it is hereby, denied respecting all conditions except that of petitioner's being forced to work in the barber shop. In respect to that condition of confinement, respondent should assign petitioner to other work within the institution which would not be deleterious to his hip condition. If the respondent will promptly change the work assignment of the petitioner to one approved by Dr. Rhoads or other competent medical authority and suitable for one of his physical condition, the petition

herein will be dismissed as moot. Otherwise the writ will issue to relieve the petitioner of his present work assignment and to require suitable reassignment. For these reasons, it is

Ordered that the respondent advise the Court in writing within five days of receipt of a copy of this order whether petitioner has been reassigned to suitable work approved by Dr. Rhoads or other competent medical authority.