Reies **LOPEZ TIJERINA**, Petitioner,

v.

Dr. **P. J. CICCONE**, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 18589–3.

United States District Court,
W. D. Missouri, W. D.

Jan. 21, 1971.

Reies Lopez Tijerina, pro se.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondent.

## JUDGMENT DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Petitioner, a federal convict confined in the United States Medical Center for Federal Prisoners, petitions this Court for a writ of federal habeas corpus contending that he is receiving inadequate medical treatment in the Medical Center. Leave to proceed in forma pauperis has been previously granted.

Petitioner states that he was convicted by a jury in the United States District Court for the District of New Mexico of an offense which he does not name [shown to be destruction of government property and aiding and abetting, in violation of 18 U.S.C. § 1361 and 18 U.S.C. § 2, and assaulting, resisting, opposing, impeding, intimidating or interfering with a Federal Officer in violation of 18 U.S.C. § 111 by the judgment of that Court]; that he was sentenced on the "first count" to a term of two years' imprisonment and on the "second count" to a term of five years' probation; that he appealed from the judgment of conviction and imposition of sentence to the United States Court of Appeals for the Tenth Circuit; that the appellate court "upheld" his conviction; that certiorari was denied in the Supreme Court of the United States; and that he has filed no prior postconviction petitions, motions or applications in any court, although the records of this Court show that on August 25, 1970, after the issuance of the show cause order in the case at bar, petitioner filed a petition for habeas corpus in this Court attacking the validity of his conviction in the sentencing court, which was denied in favor of his remedies in the sentencing court under § 2255, Title 28, U.S.C. Tijerina v. Ciccone (W.D.Mo.) Civil Action No. 18652–3.

In his petition herein for federal habeas corpus, petitioner stated the following as grounds for his contention that the conditions of his confinement in the Medical Center violate his federally protected rights:

(1) that he had been denied medical attention for a malignant tumor of his throat;

(2) that he was placed at work in May 1970 immediately after an operation, with the result that he suffered a "blackout";

(3) that he was sent certain legal papers by his son but they were not delivered to him; and

(4) that he lives under the "shadow of terror, panic and torture" because of "his race and his position of leadership for the rights of the Indo-Hispano (Chicano) people."

In addition, in his traverses of the respondent's response and supplemental response to the show cause order herein,

petitioner made the following additional complaints:

(1) "While under the Custody of the United States Attorney General, the life of the petitioner was put in danger of death, when top leaders of the Minutemen, an extreme right wing organization (Robert DePugh and Walter Patrick Peyson) were put in the same cell with petitioner, knowing beforehand that the abovementioned individuals, had through their organization vowed to kill petitioner."

(2) that petitioner's health was continuing, after the filing of the petition herein, to deteriorate rapidly, to include (a) the contracting of tuberculosis and (b) significant weight loss.

(3) that petitioner was being treated discriminatorily because of his race by respondent in that (a) petitioner was being harassed by being subjected to psychiatric treatments, (b) petitioner was not allowed to eat in the cafeteria, (c) petitioner was forced to work in the kitchen and (d) petitioner was denied any and all medical treatment for a period of four months.

(4) that, since his commitment to the attorney general, petitioner has suffered physical threats, solitary confinement, "denial of Parole application, as order (sic) by U. S. Judge Bratton of Albuquerque, N. Mex.", denial of "ordinary privileges, such as commissary, population status, normal Wife visits and last but not least persuading petitioner to drop appeals to the Supreme Court, with undue pressure."

■■ From the petition herein, the response and supplemental response to the show cause order herein, petitioner's traverses thereof and the affidavits of the physicians who examined petitioner (at the Court's request) and those who treated him, it has been determined for the following reasons that all of petitioner's cognizable factual contentions are without merit. Therefore, the petition herein for habeas corpus should be denied for failure of petitioner to state any denial of his federal rights by respondent or other exceptional circumstances. The petitioner herein, by filing a petition for habeas corpus has chosen the proper method by which to challenge the legality of constitutionality, or both, of the conditions of his otherwise lawful confinement. In re Bonner, 151 U.S. 242, 14 S. Ct. 323, 38 L.Ed. 149; Hudson v. Hardy, 137 U.S.App.D.C. 366, 424 F.2d 854, n. 3, and cases therein cited; Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F. 2d 415, 419–420; In re Baptista (W.D. Mo.) 206 F.Supp. 288; Ramsey v. Ciccone (W.D.Mo.) 310 F.Supp. 600. But, under the provisions of § 4042, Title 18, United States Code, care, custody, control, treatment and discipline of federal prisoners is vested solely in the Attorney General of the United States or his authorized delegate and the exercise of that discretion will not be reviewed by the Courts in the absence of the denial of a federal right or other exceptional circumstances. Harris v. Settle (C.A. 8) 322 F.2d 908, cert. denied 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179; Austin v. Harris (W.D.Mo.) 226 F.Supp. 304. In this case, for the following reasons, petitioner has neither stated nor shown the denial of a federal right or other exceptional circumstances.

■ First, petitioner alleges that he has a malignant tumor of the throat for which he has been denied treatment. On this issue, the respondent initially responded with the affidavit of Robert E. Cohen, M.D., Deputy Chief of Surgery in the Medical Center, who stated that his initial examination of respondent revealed that he suffered from "choking and throat constriction" which had been present for some 20 years; that this was apparently due to "pressure from cervical arthritis" as was revealed by an esophagoscopy performed on petitioner on June 2, 1970, by a consultant thoracic

surgeon, during which the "esophagus was completely freed up, and the pressure was released"; and that a "postoperative followup barium swallow showed that the esophagus was not dilated, and the pressure that was previously seen on the esophagus was much less prominent." This was supplemented by the affidavit of Jonathan Rhoads, M.D., Director of Surgery, who averred that there was "no evidence whatever" of a maligant tumor; that while some 20 x-rays had been taken of petitioner's throat, there was "no evidence of radiation injury" nor any possibility that the x-rays increased the likelihood of malignancy; and that there was "no depression of his white count, no anemia, and no redness of the skin of his. neck [which] is an early sign of tissue injury from x-ray." Finally, at the request of the Court, petitioner was examined by an independent, qualified consultant, Ramon A. Shane, M.D., on December 16, 1970. His affidavit was filed herein on December 23, 1970. Therein, Dr. Shane denied the presence of a malignant tumor and stated that petitioner's only throat affliction is "a growth of Staphylococcus aureus, which is common flora of the throat." All of the foregoing averments have been made without any general or specific denial by petitioner. In his supplemental traverse, petitioner admitted that he did not suffer from any malignancy, but asserted that "without proper medication (and it was, and still is, being denied) [petitioner felt that] this 'tumor' would develop into a malignant 'tumor.'" But the law is well settled that it is the intentional denial (or denial with reckless and callous disregard of petitioner's health) of needed medical treatment which constitutes cruel and unusual punishment, not inadequate, improper or negligent medical treatment. Ramsey v. Ciccone (W.D.Mo.) 310 F. Supp. 600; Veals v. Ciccone (W.D.Mo.) 281 F.Supp. 1017; Wilkinson v. Swenson (W.D.Mo.) Civil Action No. 16449–3. It is evident from the uncontradicted affidavits of the physicians who examined and treated petitioner that he is not being recklessly, callously or intentionally denied medical treatment in respect of the alleged throat tumor. The diagnosis unanimously reached by all the physicians is that no malignant throat tumor exists. It cannot therefore be said that petitioner's medical treatment is so improper that it is not sanctioned by any recognized school of medical thought. See Veals v. Ciccone, *supra;* Wilkinson v. Ciccone, *supra.* Petitioner's contention that he should be given medication to prevent the development of a malignant tumor, when no circumstances indicate that such a development is likely, does not state any claim in habeas corpus. As the Eighth Circuit Court of Appeals has recently stated in Cates v. Ciccone (C.A. 8) 422 F.2d 926, 928:

"In the absence of factual allegations of obvious neglect or intentional mistreatment, the courts should place their confidence in the reports of reputable prison physicians that reasonable medical care is being rendered. The district courts cannot become a forum to enjoin prison authorities for alleged negligence in rendering medical care to prisoners under the guise of habeas corpus or in any other action seeking injunctive relief."

Petitioner's first contention is therefore without merit as a claim of denial of federal rights. If the diagnoses have been based upon negligent observations, petitioner may conceivably have an action under state or federal law in the state or federal courts for medical malpractice. See Ayers v. Ciccone (W.D. Mo.) 300 F.Supp. 568, 573, affirmed per curiam (C.A. 8) 413 F.2d 1049, where it is said:

"If medical care deemed appropriate by the doctors is refused, [the prisoner] may claim cruel and unusual punishment. If it is administered, he may claim that he was treated in a negligent manner and a suit for damages against the prison officials and the United States may result."

■ Second, petitioner complains that after having been examined with an

esophagoscope on May 18, 1970, he was returned to his regular work in the Medical Center and that he consequently "blacked out," due to his weakened condition. According to the affidavit of Dr. Rhoads, petitioner was the subject of an esophagoscopy on May 18, 1970, and was returned to work the next day. Dr. Rhoads further stated that an esophagoscopy is "performed under general anesthesia, takes about 15 minutes after which the man is awakened immediately [and] [i]t was not considered at all improper for the man to return to work the next day." Petitioner did not deny or contradict any of those allegations. It cannot therefore be concluded that sending petitioner back to work the day after his esophagoscopy amounted in any respect to cruel and unusual punishment, when the respondent, under the medical facts and circumstances of petitioner's case, could not reasonably have foreseen that the return would cause petitioner to "black out." See Daniels v. Van DeVenter (C.A. 10) 382 F.2d 29, where it is said that a denial of federal rights is not judicially cognizable unless it is reasonable to hold the respondent responsible for the natural consequences of his acts. Further, in itself, without other surrounding circumstances, this incident cannot be regarded as cognizable in federal habeas corpus because it is not alleged to be a *continuing* violation of federal rights. See In re Baptista, *supra.*

Third, petitioner alleges that his son sent him some legal papers which he never received. Because, construing the petition liberally in petitioner's favor in accordance with the rule of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, petitioner may thereby have stated either the undue restriction of his access to the mails or the denial of access to the courts, this allegation was included in the show cause order as providing a possible ground for habeas corpus relief. In the response to the show cause order, respondent denied any denial of petitioner's access to the mails or to the courts. The Court then expressly invited petitioner to state in his traverse the specific papers of which he was deprived and the facts which showed respondent to have been responsible for the deprival. Petitioner responded as follows:

"Petitioner has no present knowledge as to the date when legal papers were not delivered to petitioner in the medical center; except for the report that the son of petitioner gave to the petitioner."

Petitioner does not thereby state any denial of his federal rights by respondent. It cannot be determined from the facts alleged by petitioner, which he cannot support with his own personal knowledge or reliable information, that respondent has denied him proper access to the mails or to the courts. In habeas corpus, the burden is on the petitioner to state and show facts entitling him to relief. Aubut v. Maine (C.A. 1) 431 F.2d 688; United States ex rel. Schuster v. Herold (C.A. 2) 410 F.2d 1071. Petitioner has not met his burden in the case at bar with respect to this allegation.

Further, petitioner makes the general, conclusory allegation that he is discriminated against by respondent because of his race and because of his position as a leader of the Chicano people in New Mexico. But, again, petitioner has stated no facts which support this general allegation. That petitioner has been given frequent and assiduous medical examination and treatment is evidenced overwhelmingly by the uncontradicted contents of the affidavits of the examining and treating physicians, as noted above. These affidavits further establish without contradiction that petitioner has been given surgery for hernia in the summer of 1970 and a month's postoperative convalescence thereafter. Petitioner complains that he eats in his hospital ward while other inmates dine in the Medical Center cafeteria. But Dr. Rhoads stated in his affidavit that officers in the Medical Center "are unaware that this man has not left the ward to go to the cafeteria to eat with the rest of the inmates." Petitioner does

not traverse the averment. Petitioner cannot be deemed to have suffered discrimination in this regard when he has not stated, nor is it inferable from the pleadings herein, that he is or has been excluded from the cafeteria. Petitioner does not state facts which would warrant a conclusion that he has been discriminated against in any respect. This contention is therefore without merit.

The above and foregoing contentions of petitioner are the only ones which petitioner has properly raised in this habeas corpus action. Petitioner's other allegations were raised in pleadings subsequent to the petition and are outside the scope of the issues raised by the petition and response to the show cause order. It is proper, therefore, for the Court not to consider them in this action because they have been improperly raised. Strauser v. Ciccone (W.D.Mo.) 310 F.Supp. 1011, 1013.

Further, none of petitioner's improperly-raised allegations state any claim of denial of federal rights against respondent. His allegation that he was once confined in another institution in the same cell with his political enemies does not state any claim against respondent because it is not stated that the confinement took place in the Medical Center or that it continues currently. See In re-Baptista, *supra*.

On the alleged tuberculosis issue, the uncontradicted affidavit of the examining physician states that petitioner has been given a tuberculin test with the results indicating that petitioner does not have tuberculosis. The uncontradicted affidavits of Dr. Rhoads and Dr. Shane both state that petitioner has not suffered any significant weight loss during his confinement in the Medical Center; and that he weighed approximately 175 pounds upon entering the Medical Center and weighs about 170 pounds currently. The allegation that psychiatric

treatment is simply harassment cannot constitute a claim in habeas corpus, absent exceptional circumstances not alleged in this case. "Even though the treatment is unusually painful, or causes unusual mental suffering, it may be administered to a prisoner without his consent if it is recognized as appropriate by recognized medical authority or authorities." Ramsey v. Ciccone, supra, 310 F.Supp. at 605; Haynes v. Harris (C.A. 8) 344 F.2d 463. "The prisoner cannot be the ultimate judge of what medical treatment is necessary or proper for his care." Cates v. Ciccone, *supra*, 422 F.2d at 928; Ayers v. Ciccone, *supra*. See also Haynes v. Harris, *supra*. There are no facts alleged or from which it can be inferred that the psychiatric treatment of petitioner is not recognized as proper by any competent professional authority. Nor does the fact that petitioner works in the Medical Center kitchen, without more, warrant a conclusion that his federal rights are being violated. Petitioner, as has been noted above, has not intentionally been excluded from the cafeteria and has not been denied needed medical treatment. And petitioner's allegations that he has been subjected to various other deprivals since his commitment to the Attorney General do not state habeas corpus claims against respondent because it is not stated that petitioner was in respondent's custody when the deprivals were suffered. If petitioner was in fact in respondent's custody, and the deprivals continue, these claims may be made the subject of a subsequent petition for habeas corpus by petitioner. Strauser v. Ciccone, *supra*.

For the foregoing reasons, all of petitioner's claims are without merit and do not provide any basis for relief in habeas corpus. It is therefore

Adjudged that the petition herein for habeas corpus be, and it is hereby, denied.