James Clay MARTIN, Jr., Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 71-3449.

United States Court of Appeals, Fifth Circuit.

June 13, 1972.

J. V. Eskenazi, Federal Public Defender (Court-appointed), W. H. Stiles, Miami, Fla., for petitioner-appellant.

Robert W. Rust, U. S. Atty., Harold F. Keefe, Robert Byrne, Asst. U. S. Attys., Miami, Fla., for respondent-appellee.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

This is the second appeal from the denial by the trial court of a motion, under 28 U.S.C.A. Section 2255, to vacate Martin's conviction and twelve year sentence for bank robbery. On the earlier

appeal, Martin sought to obtain review of the denial of his motion which he based on six separate alleged errors relating to his trial.[1] Without making any mention of the other five, this court dealt with one, spoken of throughout as Number Five. See Martin v. United States, 5th Cir. 1971, 447 F.2d 985. Touching on this point, which was that Martin's identification was "tainted" because the lineup, which was held soon after his arrest, was improperly conducted, the court said:

> "The court denied appellant's motions for a trial transcript and for § 2255 relief. There was a contested issue of fact as to whether law enforcement officers who appeared in a lineup with appellant, in which lineup appellant was identified by a witness, were known to the witness to be law enforcement officers and thus not persons suspected of the crime involved, with the result that the lineup was tainted. The trial court decided this contested issue on the basis of affidavits, which it may not do. Pike v. United States, 409 F.2d 499, 501 (5th Cir. 1969); Machibroda v. United States, 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed.2d 473, 478 (1963).

> Vacated and remanded."

The improper conduct charged was, in substance, that the three other persons in the lineup with Martin were either FBI agents or local police officers; that there was a likelihood that the witness, St. Onge, had known one or more of them to be law enforcement officers before seeing them in the lineup; that he may have seen Martin in the custody of one or more of them; and, more critically, that, although St. Onge had, on some occasion, referred to Martin and his brother as "boys" or "young men" or, possibly, even as "teenagers", the other persons in the lineup varied in age from 28 to 41, whereas Martin was 18 years old and his brother was 20 years old; the 28 year old agent was seven inches taller than Martin and the one nearest Martin's height was 33 years old. Martin also alleged that certain identifying articles of clothing worn by the three men would clearly make him the "odd" man in the group.

The trial court, at the first filing, required the government to reply to this charge. [Responses were made by the Government by the furnishing of affidavits dealing with all of these matters.] The court then found that on these affidavits, there was nothing to "taint" the lineup. The court ruled as to the remaining five grounds, that they were not available for purposes of a Section 2255 motion, because, in effect, they were "run of the mill" trial errors, if true, and, by signing a voluntary waiver of the right to appeal from his original conviction and sentence Martin had waived his right to contest such errors.

On appeal, as noted, this court made no comment on the trial court's disposition of the five grounds of trial error, but remanded the case to the trial court to resolve the issue of the possible "taint" in the lineup.

Upon remand, the trial court made it plain that there was no issue before it except the question whether the circumstances surrounding the lineup were such as would jeopardize the integrity of the proceeding in conflict with the principles implicit in the Supreme Court's decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). All of the persons involved in the prior confrontation were present in court and testified. The three persons who participated in the lineup all testified that they had not

---

1. Martin had previously attempted, without success, and after waiving his right to appeal, to obtain an order of the court requiring the furnishing of a transcript of his trial at government expense. He stated that even these six separate alleged errors may not be all that he might ultimately seek to raise in the habeas court once he obtained the record, which, in fact, he did some time after the second hearing, the one that is now on appeal.

seen St. Onge prior to their appearing in the lineup with Martin, and they all testified that there were no clothing characteristics or indicia of official status on their persons and that they had even withdrawn pencils and other cards from their pockets and in some instances, at least, had opened the collars of their shirts. They testified that none of them wore jackets, because Martin was without one. St. Onge testified that he had not seen any of the three persons prior to their appearing in the lineup and that he did not know that any of them were law enforcement officers, nor did he know anything about them at all. He testified that he did not see Martin in the custody of any of them and that he, in fact, identified Martin because of the way he looked and because of the clothing he wore. He testified that he had been one of two men who had sought to rent a boat from him earlier in the day.

Although it is quite difficult to understand how a person placed in the position of St. Onge, knowing the suspect to be either a "boy" or a "young man" or a "teenager", when he was in fact an 18 year old youth, would have a fair opportunity to compare him with the three men who stood in the line with him in the police station on the night of the lineup when the youngest of the three was 10 years older than Martin but was seven inches taller and the one nearest his height was 33 years of age and the third man was 41 years old, the trial court, nevertheless, had no hesitancy in finding as a fact that, "I find nothing else about the procedures in the preparation for or carrying out of the lineup and the identification that impugned its integrity. Accordingly, the lineup was not tainted."

This finding by the trial court is protected by the "clearly erroneous" rule; that is to say, we cannot interfere with it unless we determine that such a finding of fact was "clearly erroneous". We have no photographs; we are unable to see the persons involved and we are unable to compare the appearance of even the 41 year old participant in the lineup with the 18 year old, Martin. Nor are we able to determine whether a person like St. Onge would, by some alchemy, be able automatically to spot a law enforcement official as contrasted to the accused. In short, there is no basis on which we would be justified in setting aside this finding of fact by the trial court.

We recognize that much of the thrust of Wade and Gilbert, supra, has been blunted by the fact that the Supreme Court stated that it is peculiarly a problem for the trial court to ascertain whether a taint exists at the time of the lineup and whether a subsequent identification has in any way been purged of such taint. Nevertheless, all parties agree that essential requirements of fairness and absence of "suggestive influences" protect the potential accused in such lineups. See Wade, supra, 388 U.S. at pp. 229, 236, 87 S.Ct. 1926.

However, here this trial court has made its fact determination and we cannot overrule it as a matter of law. For a discussion of the related matter of the right to counsel at lineups, see The Right to Counsel at Lineups, Wade and Gilbert in the Lower Courts, 36 University of Chicago Law Review, 830 (1969).

■ The remaining grounds for his 2255 motion now on appeal, and which were not previously commented on by this court in its earlier decision, and which were not considered by the trial court on remand are, in fact, all alleged errors that occurred during the trial of the case. All of them are such as would normally be the subject of a direct appeal. Moreover, in the event Martin had taken a direct appeal he would, of course, have been entitled to have a transcript of the proceedings available to him at government expense, to raise all such questions as are comprehended within these five grounds. No attack has been made by him as to the voluntariness of his waiving his right of appeal. We, therefore, conclude, as did the trial court, that the Petition for Relief

under Section 2255 cannot, in this case, be made a substitute for appeal.

We, therefore, affirm the judgment of the trial court in the original order appealed from us to the remaining five grounds not dealt with in the prior decision of this court and from the current judgment denying § 2255 relief on the finding of fact by the trial court that the lineup was not improperly conducted.

The judgment is affirmed.