**Hiram Cazes PARNELL, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

**No. 72-1649**

**Summary Calendar.**\*

United States Court of Appeals, Fifth Circuit.

July 20, 1972.

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Sky E. Smith, Miami, Fla. (Court appointed), for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Arnold R. Ginsberg, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

PER CURIAM:

Appellant's contentions and the facts of this case have been successively refined through the course of his state appeal from a conviction for breaking and entering with intent to commit grand larceny, Parnell v. State, 204 So.2d 910 (Fla.App., 1968), and the State of Florida's petition for certiorari in the state supreme court, State v. Parnell, 221 So. 2d 129 (Fla., 1969). The contentions reduce themselves to whether the appellant's wife had been placed under arrest when officers executed a defective search warrant for the proceeds of a burglary. The district court, in an order for hearing (set out as Appendix A), referred the case to a United States Magistrate for an evidentiary determination of the question.

The hearing, at which the state and appellant stipulated as to the content of the state transcript, revealed a conflict between the present recollections of appellant's wife and the arresting officers as to whether or not she had been notified of her arrest at, or contemporaneously with, the execution of the invalid search warrant or had been placed under arrest the following day. It is uncontroverted that Mrs. Parnell was not taken to the station and booked until the following day. The Magistrate, in his memorandum opinion and recommendation (set out as Appendix B), adopted by the district court, noted the conflict in testimony and concluded against the petitioner's contentions.

■■ The record before us includes the state court proceedings, the opinions of the Florida appellate and supreme courts in this cause, and the record constructed in the court below. From this record we see no *apodictic* reason to conclude either for or against appellant's contention. There is a facial conflict in the record. Were we free of the constraints of F.R.C.P. 52(a), we might conclude in opposition to the findings of the Magistrate adopted by the district court. That, however, is not the case. The findings of a magistrate in a postconviction remedies case, when adopted by the district court, are akin to the findings of a special master whose findings are likewise adopted by the court.[1]

---

1. The provisions of Rule 52(a) are of general applicability to civil cases. The rule has been specifically held applicable to habeas corpus proceedings. Johnson v. Ellis, 296 F.2d 325 (5th Cir., 1961); cert. den. 369 U.S. 842, 82 S.Ct. 873, 7 L.Ed.2d 846. See generally Wright and Miller, *supra*, § 2573, n. 36. The requirement that the district court enter findings of fact and conclusions of law in habeas corpus cases however remains. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015,

In each case, and especially in cases of conflicting factual allegations, the factual conclusions of the individual who hears the case should not be lightly rejected unless "clearly erroneous." Cf. Wright and Miller, Federal Practice and Procedure § 2584.

We accordingly affirm. Compare Martin v. United States, 462 F.2d 60 (5th Cir., 1972) [1972].

Affirmed.

APPENDIX A

ORDER FOR HEARING

United States District Court
Southern District of Florida

Hiram Cazes Parnell

Petitioner,

v. No. 71–1562–CIV–WM

Louie L. Wainwright,

Respondent.

Hiram Cazes Parnell has filed a Petition for Writ of Habeas Corpus seeking his release from Avon Park Correctional Institution, Avon Park, Florida, where he is presently serving a twelve year sentence for breaking and entering with intent to commit grand larceny imposed in the Criminal Court of Record, Dade County, Florida, on October 20, 1966. As grounds for the instant petition, petitioner alleges that evidence introduced at his trial was obtained in violation of his Fourth Amendment right against unreasonable searches and seizures. This ground was presented on direct appeal to the Florida District Court of Appeal, Third District, which court reversed petitioner's conviction on this ground. Parnell v. State, 204 So.2d 910 (Fla.App. 3, 1968). The State of Florida thereafter petitioned the Supreme Court of Florida for a Writ of Certiorari resulting in a decision by that court reversing the District Court's opinion and affirming the petitioner's conviction. State v. Parnell, 221 So.2d 129 (Fla.1969). Petitioner having presented his claim to the highest court in the State of Florida has, therefore, exhausted his state remedies.

A hearing was held in the state trial court on petitioner's Motion to Suppress prior to trial. The record of that hearing together with the record of his trial establishes the following facts:

On January 6, 1966 the Garwood residence located in the Southwest Section of Miami was burglarized and numerous items stolen. On the following day a police officer Robert Rein, acting in an undercover capacity, arranged a meeting with the petitioner. At the time Rein arranged this meeting he was unaware of the Garwood burglary. The meeting with petitioner was arranged because petitioner was suspected of being a burglar that had committed numerous burglaries in the Southwest section of Miami and Rein hoped that in his pretended character as a "fence" he could obtain evidence against the petitioner. Pursuant to this plan Officer Rein rented a motel room and prior to his meeting with petitioner made arrangements to have the room bugged so that conversations in the room could be monitored and recorded through an electronic device to be operated by other officers outside the room. After this was accomplished, Officer Rein, in his undercover capacity as a "fence" met with petitioner and proceeded with him to the "bugged" hotel room. After arriving at the room petitioner made numerous incriminating statements concerning his occupation as a burglar. In addition, petitioner produced at this meeting certain credit cards that had been stolen from the Garwood residence the night

---

85 L.Ed. 1392 (1941). It is for this latter reason that, although United States Magistrates have been empowered, upon adoption of an appropriate local rule, to conduct preliminary review of applications for post conviction remedies, 28 U.S.C.A. § 636(b) (3), any findings of fact made by a magistrate upon the referral of an application to him are only advisory. The magistrate's findings of fact receive the imprimature of Rule 52(a) by the district court's adoption of those findings as its own.

before. After these credit cards were produced, the monitoring officers David Green and Robert Brown entered the room and arrested petitioner. Subsequent to petitioner's arrest Officer Green personally verified that the credit cards seized from petitioner were stolen on the previous evening from the Garwood residence and also received a detailed description of the other property that had been stolen. Officer Brown then proceeded to obtain a search warrant for petitioner's residence while Officer Green commenced a surveillance of petitioner's residence awaiting the arrival of Officer Brown and the search warrant. During the time that Officer Green was waiting for Brown to arrive he stationed himself on the public street in front of the petitioner's home. He testified that with the aid of binoculars from that vantage point he was able to observe, through a plateglass window, petitioner's wife moving between the back of the home and the dining room area. While observing petitioner's wife he saw her move a portable television set, a large radio in a brown leather case and a small black jewelry box. These items observed by Officer Green matched the description of the property stolen on the previous evening from the Garwood residence. Thereafter when Officer Brown arrived with the search warrant the officers proceeded to the front door which was opened by petitioner's wife; they announced their identity, read the warrant to her and commenced their search resulting in the seizure of numerous items of stolen Garwood property. The television set, the large radio and the small black jewelry box were seized from the dining room table and were the items that Officer Green had observed in plain view through the binoculars. The remaining items seized were discovered as a result of a thorough search of the remainder of the premises. All items seized were introduced into evidence against petitioner at his trial.

For reasons unnecessary to discuss here, the State Courts all concluded that the search warrant was defective. The Florida Supreme Court upheld the search, however, on two theories. First, that it was a lawful search made incidental to a valid arrest. Second, that Officer Green, having observed stolen property in plain view was justified in seizing same without a warrant.

The testimony of the officers was that petitioner's wife was in fact placed under arrest that evening for possession of stolen property, but because she became hysterical and there were young children in the house including an infant, she was not booked into jail that evening. Instead, the officers testified that on the following day they returned to petitioner's residence after receiving an arrest warrant and took petitioner's wife into custody. If petitioner's wife was in fact arrested on the evening in question the record does not reflect whether the arrest took place prior to the search or after the search. The record, therefore, does not support the theory that the search was made incidental to a valid arrest.

The Supreme Court of Florida also upheld the search and seizure under the plain view doctrine enunciated in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The court's reasoning was that the officers were on the premises legally, although pursuant to a defective search warrant, and merely seized what was in plain view on the dining room table. There appears to be two significant problems in upholding the search and seizure on these grounds. First, the officers seized more than what was in plain view. The record clearly shows that the officers conducted a thorough search of the house and on the night in question seized evidence which was admitted against petitioner at his trial that was not in plain view.

Secondly, it is apparent that the plain view doctrine may have no application to the instant case. The Supreme Court has recently pointed out in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) that plain

view alone is never enough to justify the warrantless seizure of evidence. (The seizure here must be considered warrantless because admittedly the search warrant was defective). The plain view doctrine serves to supplement the prior justification for the search whether it be a warrant for another object, hot pursuit, search incident to a lawful arrest, or some other legitimate reason for being present unconnected with a search against the accused. As stated by the Court:

> Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

The Court also pointed out that the plain view doctrine only applies when the discovery of evidence in plain view is inadvertent. A plain view seizure will not turn an initially valid (and therefore limited) search into a general one while the inconvenience of procuring a search warrant to cover an inadvertent discovery is great. In this regard the court stated:

> But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as "per se unreasonable" in the absence of "exigent circumstances."

> If the initial intrusion is bottomed upon a warrant which fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of "warrants . . . particularly de-

scribing . . . [the] things to be seized."

Applying these principles to the instant case the record does not contain sufficient facts to justify application of the plain view doctrine. From the record it appears that the officers had ample opportunity to obtain a valid warrant; they knew the exact description of the property and its location in advance and they intended to seize the property when they came upon petitioner's property.

For these reasons, it is

Ordered and adjudged that this matter is hereby referred to the Honorable Michael J. Osman, United States Magistrate for the purposes of holding an evidentiary hearing on December 8, 1971 at 9:30 a. m. and making a recommendation to the undersigned regarding his findings at said evidentiary hearing. Respondent shall produce petitioner at the hearing and make him available in Dade County not less than 7 days prior to said hearing. Sky Smith, Esquire, Penthouse I, Roberts Building, Miami, Florida, is hereby appointed as counsel to represent petitioner in this cause.

Done and ordered at Miami, Florida, this 18th day of November, 1971.

(Signed) W. O. MEHRTENS
UNITED STATES
DISTRICT JUDGE

APPENDIX B

MEMORANDUM OPINION
AND RECOMMENDATION

United States District Court
Southern District of Florida

Hiram Cazes Parnell,
                    Petitioner,

v. Case No. 71–1562–CIV–WM

Louie L. Wainwright,
                    Respondent.

Hiram Cazes Parnell has filed a Petition for Writ of Habeas Corpus seeking his release from Avon Park Correctional Institution, Avon Park, Florida, where he is presently serving a twelve year

sentence for breaking and entering with intent to commit grand larceny imposed in the Criminal Court of Record, Dade County, Florida, on October 24, 1966. As grounds for the instant petition, petitioner alleges that evidence introduced at his trial was obtained in violation of his Fourth Amendment right against unreasonable searches and seizures. This ground was presented on direct appeal to the Florida District Court of Appeals, Third District, which court reversed petitioner's conviction on this ground. Parnell v. State, 204 So.2d 910 (Fla.App.3, 1968). The State of Florida thereafter petitioned the Supreme Court of Florida for a Writ of Certiorari resulting in a decision by that court reversing the District Court's opinion and affirming the petitioner's conviction. State v. Parnell, 221 So.2d 129 (Fla. 1969). Petitioner having presented his claim to the highest court in the State of Florida has, therefore, exhausted his state remedies.

On November 8, 1971 the Honorable William O. Mehrtens, United States District Judge entered an order referring this cause to the undersigned to conduct an evidentiary hearing and to make findings of fact, conclusions of law and a recommendation as to the disposition of this cause. Pursuant to said order hearings were held before the undersigned on December 8, 1971 and December 14, 1971. At the hearings both parties stated they had no objection to the reference of this cause to the undersigned. Also at the hearings, in addition to the testimony of the witnesses the parties stipulated to the introduction of the state court record. That record, together with the evidence presented at the hearings held by the undersigned establishes the following facts.

On January 16, 1966 the Garwood residence located in the Southwest Section of Miami was burglarized and numerous items stolen. On the following day a police officer Robert Rein, acting in an undercover capacity, arranged a meeting with the petitioner. At the time Rein arranged this meeting he was unaware of the Garwood burglary. The meeting with petitioner was arranged because petitioner was suspected of being a burglar that had committed numerous burglaries in the Southwest section of Miami and Rein hoped that in his pretended character as a "fence" he could obtain evidence against the petitioner. Pursuant to this plan Officer Rein rented a motel room and prior to his meeting with petitioner made arrangements to have the room bugged so that conversations in the room could be monitored and recorded through an electronic device to be operated by other officers outside the room. After this was accomplished, Officer Rein, in his undercover capacity as a "fence" met with petitioner and proceeded with him to the "bugged" hotel room. After arriving at the room petitioner made numerous incriminating statements concerning his occupation as a burglar. In addition, petitioner produced at this meeting certain credit cards that had been stolen from the Garwood residence the night before. After these credit cards were produced, the monitoring officers David Green and Robert Brown entered the room and arrested petitioner. Subsequent to petitioner's arrest Officer Green personally verified that the credit cards seized from petitioner were stolen on the previous evening from the Garwood residence and also received a description of the other property that had been stolen. Officer Brown then proceeded to obtain a search warrant for petitioner's residence while Officer Green commenced a surveillance of petitioner's residence awaiting the arrival of Officer Brown and the search warrant. During the time that Officer Green was waiting for Brown to arrive he stationed himself on the public street in front of the petitioner's home. With the aid of Binoculars from that vantage point he was able to observe, through a plateglass window, petitioner's wife moving between the back of the home and the dining room area. While observing petitioner's wife he saw her move a portable television set, and a small black jewelry

box. These items observed by Officer Green matched the description of the property stolen on the previous evening from the Garwood residence. Thereafter when Officer Brown arrived with the search warrant the officers proceeded to the front door which was opened by petitioner's wife, they announced their identity and read the warrant to her.

From this point on the testimony is in conflict as to what occurred after the officers entered the house. Petitioner's wife testified that the officers immediately proceeded to search the house and ultimately seized numerous items found therein. Officer Green testified that at some time after entry into the house he placed the petitioner's wife under arrest for receipt and possession of stolen property. Officer Green could not recall if this was done immediately prior to any search or whether it was done shortly after he examined the portable television set and the black jewelry box found on the dining room table. He did recall making the announcement at the front of the house. Petitioner's wife's testimony was that she was not arrested that evening, but that the following day the officers returned with a warrant for her arrest. Officer Green's testimony corroborated by Officer Brown, was that the petitioner's wife was arrested that evening, but because it was late into the evening, there were numerous young children present, and petitioner's wife became hysterical it was decided not to book petitioner's wife into the Dade County Jail that evening.

The resolution of the conflict in the testimony is significant because the search warrant executed by the officers that evening, as stipulated by the parties, was defective. The search of the petitioner's residence resulted in the seizure of numerous itmes which were introduced into evidence at petitioner's trial. The respondent seeks to uphold the validity of this pre-*Chimel* search as one incidental to a valid arrest. The issues then are clear:

1. Was petitioner's wife's arrest based upon probable cause to believe she had committed a felony?, and

2. If so, was the search substantially contemporaneous with the arrest?

After considering all of the circumstances presented in this cause I conclude that the officers had probable cause to believe petitioner's wife had committed a felony, i. e. possession of stolen property, and that she was in fact arrested on the evening in question. Although I cannot conclude that the arrest preceded the search I can conclude that it took place within a matter of minutes after the officers observed the television and black jewelry box on the dining room table.

The fact that the search may have preceded the arrest is under the circumstances of no consequence. It is apparently well settled that where probable cause exists for arrest before a search is undertaken, it makes no difference whether the arrest precedes the search or the search precedes the arrest, if the arrest and search are substantially contemporaneous. United States v. Skinner, 412 F.2d 98 (8th Cir. 1969); Cortez v. United States, 405 F.2d 875 (9th Cir. 1968), cert. den., 397 U.S. 926, 90 S.Ct. 932, 25 L.Ed.2d 106; Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967); United States v. Lucas, 360 F.2d 937 (6th Cir. 1966), cert. den., 385 U.S. 875, 87 S.Ct. 152, 17 L.Ed.2d 102. Under the circumstances here the arrest and the search were substantially contemporaneous. This being so the seizure of the evidentiary items was not violative of the Fourth Amendment and said items were, therefore, properly admitted at petitioner's trial.

For these reasons, I respectfully recommend to the Honorable William O. Mehrtens, United States District Judge that an order be entered denying petitioner's Petition for Writ of Habeas Corpus.

Dated   1–13–72

(Signed)   MICHAEL J. OSMAN
UNITED STATES
MAGISTRATE