**Carl James WEDDING, Petitioner-Appellant,**

v.

**John W. WINGO, Respondent-Appellee.**

**No. 72-2160.**

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1973.

Decided Aug. 31, 1973.

**1132**

Joseph G. Glass, court-appointed, Louisville, Ky., on brief, for petitioner-appellant.

Ed W. Hancock, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Commonwealth of Kentucky, Frankfort, Ky., on brief, for respondent-appellee.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Circuit Judge.

Wedding appeals from the denial by the District Court of his petition for a writ of habeas corpus after an evidentiary hearing conducted by a United States Magistrate. Wedding is presently serving a life sentence imposed in 1949 by the Webster Circuit Court of Kentucky after a plea of guilty to a charge of murder. He had filed his petition for the writ in the District Court in 1971, alleging among other things that his counsel was not appointed until the day of the trial; that he was not advised of his right of trial by jury; and that his guilty plea was coerced by threat of a possible death sentence.

Wedding's petition was denied without a hearing. He appealed to this Court and we reversed and remanded with instructions to conduct an evidentiary hearing on the petitioner's claims of constitutional violation. 456 F.2d 245 (6th Cir. 1972).

Upon remand, a United States Magistrate, acting pursuant to a rule adopted by the District Court, issued an order assigning the evidentiary hearing to himself. Prior to this hearing, however, the petitioner moved to disqualify the Magistrate from holding such hearing on the ground that a Magistrate was not authorized and empowered under authority of the Federal Magistrates Act of 1968 (28 U.S.C. §§ 631 to 639 (1973 supp.)) to hold evidentiary hearings. That motion was overruled by the District Court.

The evidentiary hearing was then conducted by the Magistrate on June 26, 1972, at which time an electronic recording was made of the testimony of the witnesses. Thereafter the Magistrate adopted findings of fact and conclusions of law, in writing, ruling that no constitutional right of petitioner had been violated, and recommending that the petition be dismissed. The Magistrate submitted to the Court his findings and conclusions, together with a recording (a plastic phonograph record) of the proceedings.

The petitioner moved to have the Court give the matter de novo consideration. The Court listened to the recording and adopted the findings of fact and conclusions of law of the Magistrate as his own, and dismissed the petition as without merit.

The petitioner has again appealed to this Court, contending that the proceedings of the District Court were invalid because the United States Magistrate had no authority under the Act to

conduct an evidentiary hearing on his habeas corpus petition. We agree.

The Federal Magistrates Act of 1968, 28 U.S.C. §§ 631 to 639 (1973 Supp.) provides in relevant part:

" . . .

.(b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

(3) preliminary review of applications for post-trial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing." (28 U.S.C. § 636 (1973 Supp.))

Pursuant to this statute, the Judges of the United States District Court for the Western District of Kentucky signed an Order which amended Rule 16, Rules of that District, by adding to paragraph (c)(3) the following:

"In addition to submitting such other reports and recommendations as may be required concerning petitions for writs of habeas corpus from state prisoners, the full-time Magistrate is directed to schedule and hear evidentiary matters deemed by the Magistrate to be necessary and proper in the determination of each such petition, and to report thereon with an appropriate recommendation for the disposition thereof to the District Judge having jurisdiction of the case. The Magistrate shall cause the testimony of such hearing to be recorded on suitable electronic sound recording equipment. He shall submit his proposed findings of fact and conclusions of law to the proper Judge for his consideration, copies of which shall be provided at that time to the petitioner and respondent, and the Magistrate shall expeditiously transmit the proceedings, including the recording of the testimony, to the proper District Judge. Upon written request of either party, filed within ten days from the date such is so transmitted to the District Judge having jurisdiction thereof, the District Judge shall proceed to hear the recording of the testimony given at the evidentiary hearing and give it de novo consideration."

The interpretation by the rule which the Western District of Kentucky has placed upon the congressional grant of power to United States Magistrates is, in our opinion, incorrect.[1] The Act granted authority to the Magistrate to conduct only a preliminary review of applications for post-trial relief in order to facilitate the decision of the District Court as to whether there should be a hearing. This Court, in its mandate, had already directed that an evidentiary hearing be conducted. This rule of the

---

1. Because the Magistrates Act of 1968 cannot be interpreted to permit the procedure adopted by the Western District of Kentucky, we need not decide whether it would be permissible constitutionally for Congress to invest power to hold habeas corpus hearings in an official who is outside the pale of Article III of the Constitution. See, however, TPO, Inc. v. McMillen, 460 F.2d 348, 352–354 (7th Cir. 1972).

District Court, quoted above, attempts to expand the jurisdiction of the Magistrate and, as will be pointed out, conflicts with the Act, and is therefore invalid.

Our analysis begins with Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), wherein the Court assessed the respondent's claim that a United States Commissioner (the predecessor of the United States Magistrate) could conduct evidentiary hearings for habeas corpus by virtue of Rule 53(a) and (b) of the Rules of Civil Procedure. The Court stated:

> "It is plain, as the respondent concedes, that a commissioner is not a judge and that the command of the court's writ that the petitioner appear before that officer was not a literal compliance with the statute. The respondent argues, however, that the writ in effect referred the cause to the commissioner as a master whose function was to take the testimony and submit it, together with his findings and conclusions, for such action as the court might take upon such submission. The argument runs that this practice is in substance equivalent to a hearing before the judge in his proper person, has long been followed in the district courts in California, has not incurred the criticism of this Court in cases brought here where it was followed, is a convenient procedure, tends to expedite the disposition of such cases, is in accordance with long standing equity practice and is countenanced by Rule 53(a)(b) of the Rules of Civil Procedure.

> "We cannot sanction a departure from the plain mandate of the statute on any of the grounds advanced. We have recently emphasized the broad and liberal policy adopted by Congress respecting the office and use of the writ of *habeas corpus* in the interest of the protection of individual freedom to the end that the very truth and substance of the  cause of a person's detention may be disclosed and justice be done.  The Congress has seen fit to lodge in the judge the duty of investigation.  One of the essential elements of the determination of the crucial facts is the weighing and appraising of the testimony.  Plainly it was intended that the prisoner might invoke the exercise of this appraisal by the judge himself.  We cannot say that an appraisal of the truth of the prisoner's oral testimony by a master or commissioner is, in the light of the purpose and object of the proceeding, the equivalent of the judge's own exercise of the function of the trier of the facts."  (313 U.S. at 351–352, 61 S.Ct. at 1018).

By virtue of *Holiday*, the conduct of habeas corpus hearings by United States Commissioners became a dead issue.

Subsequently, however, Congress modified the habeas corpus statute so to provide that "[t]he *court* shall summarily hear and determine the facts, and dispose of the matter as law and justice require", rather than "[t]he *court, or justice* or *judge,* shall proceed in a summary ·way to determine the facts of the case  .  .  . " as was formerly provided.  28 U.S.C. § 2243 (1971).  (Emphasis added.)  The same judicial district involved in this case, the Western District of Kentucky, interpreted this modification of the habeas corpus statute as a new authorization by Congress to have officers other than United States Judges, hold habeas corpus evidentiary hearings.

In Payne v. Wingo, 442 F.2d 1192 (6th Cir. 1971), we squarely rejected this interpretation.  We stated therein:

> "When Congress retained the reference to the 'court' in the  new statute, it must have meant to retain the meaning that the Supreme Court gave that word in the preceding statute. Assuming, without deciding that Congress could have constitutionally changed the result of *Holiday* by a specific provision in Section 2243, it is evident that Congress chose not to do so.  We are not at liberty to disturb that decision.

\* \* \* \* \* \*

"We realize that our decision in this case does not help alleviate the tremendous and increasing burden which the expanding number of habeas corpus petitions places on United States District Judges. Nevertheless, we must be ever mindful of the fundamental role that habeas corpus plays in our judicial system. Without a clear mandate from Congress, we cannot presume, that that body would entrust a vital and often conclusive part of habeas corpus to an official, like a Special Master, who lacks the independence and authority of the federal judiciary." (Footnotes omitted) (442 F.2d at 1194–1195).

It is within this context that the interpretation placed upon 28 U.S.C. § 636(b) (1973 Supp.) by the Western District of Kentucky must be analyzed.

The respondent implicitly concedes that authorization for Magistrates to hold evidentiary hearings on habeas corpus petitions is not found in subpart (3) of 28 U.S.C. § 636(b) (1973 Supp.) That section clearly limits the duties of a Magistrate to a review of habeas corpus applications "to facilitate the decision of the district judge having jurisdiction over the case *as to whether there should be a hearing.*" (Emphasis added.) 28 U.S.C. § 636(b)(3) (1973 Supp.) Respondent's construction actually conflicts with the plain language of this subsection.

■■■ However, respondent relies upon language immediately preceding subpart (3) of Section 636(b) for authorization of evidentiary hearings by Magistrates. In introducing the explicitly granted powers of United States Magistrates, Congress stated:

"The additional duties authorized by rule [of a judicial district] include, *but are not limited to—* . . . ." (Emphasis added) 28 U.S.C. § 636(b) (1973 Supp.).

From this language respondent deduces that Congress invested in extra-judicial

officials trial powers which it had for so many years withheld. The inaccuracy of this deduction is manifest.

If Congress intended such a sweeping and far-reaching result certainly it would have indicated this clearly and positively within the body of the Magistrates Act of 1968. *Cf.,* Buckeye Power, Inc. v. Environmental Protection Agency, 481 F.2d 162 at 168 (6th Cir. 1973).

More important, such an interpretation runs directly counter to the well-established doctrine of statutory construction denominated *ejusdem generis.* This doctrine directs that a general provision of a statute will be controlled and limited by subsequent statutory language more specific in scope. The Supreme Court in Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–229, 77 S.Ct. 787, 791–792, 1 L.Ed.2d 786 (1957), articulated the rule as follows:

"[T]he law is settled that 'However inclusive may be the general language of a statute, it "will not be held to apply to a matter specifically dealt with in another part of the same enactment. \* \* \* Specific terms prevail over the general in the same or another statute which otherwise might be controlling." Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, [52 S.Ct. 322, 323, 76 L.Ed. 704].' MacEvoy Co. v. United States, 322 U.S. 102, 107 [64 S.Ct. 890, 894, 88 L.Ed. 1163]."

Therefore, although the Magistrates Act of 1968 provides that Magistrates are "not restricted to" the three powers explicitly outlined in the Act, by virtue of *ejusdem generis* those three powers are exclusive on the topics which they cover. Accordingly, insofar as habeas corpus is concerned, Magistrates have only the power to assist the District Judge in determining "whether there should be a hearing." 28 U.S.C. § 636(b)(3) (1973 Supp.).

■■ The legislative history of Section 636(b) of 28 U.S.C. supports this proposition. The original draft of the

subsection in the Senate Bill provided that the Magistrate could give:

"   .   .   .

(3) preliminary consideration of applications for post-trial relief made by individuals convicted of criminal offenses."

The Judicial Conference of the United States in September, 1966, sent to the Senate a report of its Committee on Criminal Law, which report it had adopted, and which stated as to Section 636(b):

"The Committee is of the opinion that the enumeration of duties in Section 636(b) as now worded presents a delegation which is so broad in scope and so general as to make this subsection vulnerable to possible constitutional attack   .   .   ." (Hearings on S.3475 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary.   89th   Cong.,   2d   Sess. (1966) at 241 n.)

In order to foreclose a broad interpretation of Section 636(b)(3) which would make it vulnerable to constitutional attack, the original Bill was amended and the phrase, "preliminary consideration of applications for post-trial relief" in the Bill was narrowed to "preliminary review" of the applications and the power and authority of the Magistrate was restricted to "submission of a report and recommendations to facilitate the decision of the district judge" only as to "whether there should be a hearing." It was in this amended and narrowed form that the Act was passed by Congress.

Contemplating the possibility that this Court might reject its argument that a Magistrate has the power to conduct evidentiary hearings for habeas corpus, the respondent advances a second, alternative argument in support of the proceedings below.   In its brief, respondent states:

"In the instant case, the testimony of the evidentiary hearing was electronically sound recorded.   This enabled the Federal Judge to hear the testimony and give it de novo consideration as the petitioner, in this case, requested.

"The Federal Judge in this case made an independent determination and accepted the proposed findings of fact and conclusions of law of the · magistrate as his own.   The critical factor is this, the ultimate decision was made by the District Judge, not by the magistrate."

■   To the extent that the respondent argues that the petitioner was given an evidentiary hearing "before a district judge" because he (the Judge) thereafter listened to a sound recording of the hearing before the Magistrate, we are not persuaded.[2]   With equal propriety it could be argued that any civil case could be heard by a Magistrate and the Judge could later decide the case by listening to the sound recording.   The Magistrate would indeed become an Assistant   Judge.

■   Rule 52(a) of the Federal Rules of Civil Procedure provides that a District Judge, sitting without a jury, is to make findings of fact and that these findings are not to be set aside by an appellate court unless they are clearly erroneous.   The principle which underlies this rule was expressed by the Supreme Court in United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949), as follows:

"Findings as to the design, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who *see* and hear them." (Emphasis added).

Deference is given to the factual findings of a trial judge because he has seen and observed the *demeanor* of the witnesses and their "[o]utward manner or comportment."   Webster's New Interna-

---

**2.** It would appear to us that it would take about the same amount of time for the District Judge to listen to the recording as it would require for him to preside at the evidentiary hearing.

tional Dictionary (2d ed. 1956). Listening to a sound recording of the testimony of a witness does not permit a Judge to see and observe the demeanor of witnesses and make credibility determinations therefrom.

Furthermore, it must be noted that an essential ingredient of a hearing before a Judge without a jury is the opportunity afforded to the Judge for questioning of witnesses. By his questioning of witnesses the Judge can clarify matters of evidence which are unclear; he can rule on objections made by the parties; and in the interest of justice he can make sure that both parties have had a fair hearing. By seeing and hearing the witnesses he will be in a much better position to make credibility determinations. Needless to say, the District Judge in this case could not ask questions of the sound recording. In our opinion, Wedding had the right to have his case heard by an Article III Judge.

In sum, petitioner did not have a hearing before a District Judge, either in form or in substance, as we ordered in our mandate.

In regard to the entire posture of this case, a recent admonition of this Court should be borne in mind. In Ingram v. Richardson, 471 F.2d 1268 (6th Cir. 1972), we stated:

"Crowded court calendars may be a problem in the United States District Court for the Eastern District of Kentucky. Reference of cases to Magistrates, however, is not the proper solution of the problem. . . . [T]he problem of a crowded docket must not be allowed to close the door to a litigant who has a statutory right of review *by a court*." (Emphasis added). (471 F.2d at 1271).

We vacate the judgment of dismissal and remand the case with instructions

that the Court itself hold an evidentiary hearing on petitioner's constitutional claims.[3]

In so doing, we are impelled to note that the phonographic record of the evidentiary hearing was made a part of the record to this Court, apparently in lieu of a transcript. Such procedure was unauthorized. It renders impossible a review by this Court of the record without listening to the sound recording, and it contravenes Rule 10 of the Federal Rules of Appellate Procedure and Rule 10 of this Court.

Vacated and remanded.

---

3. In the Fifth, Second and First Circuits, habeas corpus cases have been referred to Magistrates for an evidentiary hearing, or the practice suggested in a remand of a Selective Service case. Gonzalez v. Zelker, 477 F.2d 797 (2d Cir. 1973); Johnson v. Wainwright, 456 F.2d 1200 (5th Cir. 1972); Parnell v. Wainwright, 464 F.2d 735 (5th Cir. 1972); United States v. King, 455 F.2d 345 (1st Cir. 1972). It appears from a reading of the opinions in these cases that no question as to the legality of reference was raised or passed upon by the Courts.