**John Dwight RICKETTS, Petitioner,**

**v.**

**Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.**

**Civ. A. No. 73 CV 580–S.**

United States District Court,
W. D. Missouri, S. D.

Feb. 5, 1974.

**1250**

Raymond C. Conrad, Jr., Asst. Federal Public Defender, Springfield, Mo., for petitioner.

Charles B. Faulkner, Sp. Asst. U. S. Atty., Springfield, Mo., for respondent.

ORDER DENYING PETITIONER'S MOTION TO REVIEW ORDER OF NOVEMBER 29, 1973, SUSTAINING EXCEPTIONS TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE AND FINAL JUDGMENT GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Pursuant to the governing law and in accordance with Section B.1.b.(5) of Local Rule 26 of the United States District Court for the Western District of Missouri, the United States Magistrate has submitted to the undersigned Judge a report and recommendation that the petition herein for a writ of habeas corpus be denied.

On December 14, 1973, petitioner filed herein a *pro se* "Motion to Review the Order of the United States District Court Filed November 29, 1973," therein stating, in part, as follows:

"In the Order in question herein, the Court said, ' . . . (p)etitioner appears to be challenging the condition of his confinement, we will construe this action as a petition for writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 [93 S.Ct. 1827, 36 L.Ed.2d 439] (1973); Wilwording v. Swenson, 404 U.S. 249 [92 S.Ct. 407, 30 L.Ed.2d 418] (1971).' "

Petitioner further states and contends that he "does not believe that the Remedy and Relief he seeks in his original motion can be granted by a writ of habeas corpus" and therefore he requests that this Court " . . . retitle it as a Request for Injunctive Relief Under Civil Rights Statutes 42 USC Section 1983 and 28 USC 1343."

Petitioner's "Motion for Declaratory Judgment and Injunctive Relief," which was filed on November 23, 1973, was properly treated as a petition for a writ of habeas corpus in that petitioner seeks to challenge the legality or constitutionality of his otherwise lawful confinement and also the legality of his place of confinement. The appropriateness of treating prisoner petitions for declaratory, injunctive, or other extraordinary relief with respect to conditions of confinement, as petitions for writs of habeas corpus, has been clearly stated by the Supreme Court of the United States in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) and Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), and by this Court in Ramsey v. Ciccone, 310 F. Supp. 600 (W.D.Mo.1970). Section 1983, Title 42, United States Code, is not applicable to complaints by federal prisoners of actions by federal officers or agents. Therefore, petitioner's *pro se* "Motion to Review the Order of the United States Court Filed November 29, 1973" will be denied.

On December 21, 1973, the undersigned Judge received a letter dated December 19, 1973, from the petitioner in respect to the above-entitled action. In his letter, petitioner requested that he be provided " . . . an extra couple of days so that [he] might compose a halfway intelligent objection and exception." On December 21, 1973, an order was entered granting petitioner's *pro se* motion for an extension of time and the time within which to file exceptions was extended to and including December 28, 1973.

On December 28, 1973, petitioner filed herein his timely *pro se* exceptions to the report and recommendation of the United States Magistrate, therein stating as follows:

"Now comes JOHN DWIGHT RICKETTS, Petitioner pro se, in the above styled and numbered cause and objects to the Report and Recommendation of United States Magistrate that petition herein for a Writ of Habeas Corpus be Denied, and especially that portion which states:

'Petitioner therefore sought relief in the form of an order restraining respondent from transferring petitioner to the United States Penitentiary, Terre Haute, Indiana (whence he was originally transferred to the Medical Center) or "to anywhere but a 'dry' climate" and *then only after he has received "further treatment" at the Medical center.'* (emphasis added)

### A

Petitioner actually asked for:

'1.) That the Respondent(s) be restrained/prevented from transferring Movant to Terre Haute, Indiana.

2.) That the Respondent(s) be restrained/prevented from transferring Movant to anywhere but a "dry" climate.'

Or

'3.) That the Movant remain at the Medical Center for Federal Prisoners *for further treatment until such time as he can be transferred to a "dry" climate.'* (emphasis added)

### II

"Petitioner further objects and excepts to the Report in that it relies upon Local Rule 26 for authority and jurisdiction when it has been ruled in Wedding v. Wingo; CA6 8/13/73 [483 F.2d 1131], that:

'to permit Magistrates to hold the hearings "runs directly counter to the well-established doctrine of statutory construction denominated ejusdem generis. This doctrine directs that a general provision of a statute will be controlled and limited by subsequent statutory language more specific in scope" Thus (sic) a habeas petition heard by a magistrate didn't have the hearing to which he is entitled by statute.' Id.

### III

"Petitioner further objects and excepts to the Report's reliance upon Preiser v. Rodriguez, 411 U.S. 475 [93 S.Ct. 1827, 36 L.Ed.2d 439] (1973) and Wilwording v. Swenson, 404 U.S. 249 [92 S.Ct. 407, 30 L.Ed.2d 418] (1971) as reason for changing Petitioner's original motion for injunctive relief to a habeas corpus petition because:

### A

"Petitioner believes that upon review of these two cases the Court will find that Petitioner's original request for injunctive relief is the remedy see attached copy (Exhibit 'A') of Petitioner's Motion to Review the Order of the United States District Court Filed November 29, 1973.

### IV

"Petitioner further objects and excepts to the Report in that he was:

### A

"Denied effective assistance of counsel by the usage of the Public Defenders office who because of their overwhelming caseload only discussed this case with Petitioner for a maximum of ten minutes.

### B

"and who refused to ask all of the questions of the witnesses that Petitioner felt was (sic) pertinant (sic) to his case.

### V

"Petitioner further objects and excepts to the Report, and especially portion in footnote # 3 which states:

'The first paragraph of the response is an obvious error. Petitioner does not suffer from a deviated nasal septum, but chronic rhinitis caused by an allergy.'

### A

"Petitioner avers that his medical record will show that he does indeed have a 'deviated nasal septum' as well as suffering from allergies, chronic rhinitis, chronic sinusitis, and sometimes a secondary sinus infection.

### B

"Petitioner believes that this is an excellent example of the Magistrates (sic) inability to grasp the complete facts of the situation.

### VI

"Petitioner futher (sic) objects and excepts to the Report, and especially that portion of the *Findings of Fact* which:

### A

"Perpetrates the false impression that the 'desensitizing allergin' is a swift and sure cure for all of Petitioners (sic) sinus and allergy problems. This is a completely erronious (sic) conclusion that could only be conceived in complete ignorance of the testimony of Dr. Fraser, which the record will show, said that there was 'no guarantee' the desensitizing allergin would work and that it could 'take two or three years' to work.

### VII

"Petitioner further objects and excepts to the Report, and especially that portion of the *Findings of Fact* which:

### A

"Refers to the surmises and opinions of Petitioner's caseworker, Judson Hughes, as 'Fact'. Petitioner would submit that the opinion that the Petitioner 'cannot' be transferred to an institution in a dry climate is a blatant falsehood conceived to hide the fact that Judson Hughes *will not* consult even one institution located in a dry climate to find out whether or not they would accept the Petitioner.

### VIII

"Petitioner further objects and excepts to the Report, and especially that portion which refers to the 'review committee' as being representative of meaningful due process.

### A

"The Federal Penal system in general, and the Medical Center in particular are both notorious for their inability to reverse themselves without outside intervention.

### IX

"Petitioner further objects and excepts to the Report, and especially that portion of the *Findings of Fact* which states:

'The humidity differential between Terre Haute, and Southwestern United States is not great;'

### A

"This is another unfortunate, allconceived surmise of the Petitioner's caseworker, Judson Hughes, which has been ineptly contrued (sic) as 'Fact'. In Terre Haute, Indiana, the average humidity is around 80–85% yearround; while in El Paso, Texas, the average humidity is approximately 20–25% year-round.

### X

"Petitioner further objects and excepts to the Report, and especially that portion in footnote # 5 which states:

'Other pertinent considerations were made by the team, but these were the reasons given in testimony in this court why it was decided to retransfer petitioner to Terre Haute.'

"There is no factual basis for this grand assumption other than that

which was related to the Court by Judson Hughes. Unless the Magistrate would care to enlighten the Court and the Petitioner by introducing additional testimony to show what the 'other pertinent considerations' are, they should not be considered nor weighed as evidence.

## XI

"Petitioner further objects and excepts to the Report, and especially that portion which states:

'Petitioner's retransfer to Terre Haute Penitentiary will not deny him any federal right.'

### A

"Petitioner submits that he has been in Federal custody for over twenty months and at the Medical Center for over four months. Petitioner would also submit that the prison officials have been aware of Petitioner's medical problems since September of 1972, (See Exhibit 'B') and they have also been aware of a means of treating Petitioner; but, to date Petitioner has never received any medical relief.

### B

"Section 4081 of Title 18 United States Code states:

'The Federal penal and correctional institutions *shall* be so planned and *limited in size* as to facilitate the development of an integrated system which will *assure* the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and *such other factors as should be considered in providing an individualized system of* discipline, *care, and treatment* of the person committed to such institutions.' Id. (emphasis added)

If the Court should find that the Petitioner does not have such a 'constitutional' Federal right, then it must make allowances for the above mentioned 'statutory' Federal right. At Terre Haute, which is extremely overcrowded, Petitioner, after four months of trying, had to refuse to work just to be able to even see a Doctor. This type of negligence certainly does not 'assure' the 'individualized, care and treatment' that has been provided for by statutory law.

## XII

"Petitioner further objects and excepts to the Report because:

### A

"It does not conform with the prompt relief designs of the great writ. Petitioner believes he is entitled to immediate relief, and the record will clearly show the only feasible immediate relief is immediate transfer to a dry climate. Any other alternative would only be a continuation of the cruel and unusual punishment Petitioner has thus endured.

## XIII

"Petitioner further objects and excepts to the Report in that it does not include the fact that the desensitizing allergin was prescribed for over 1½ months before the plenary evidentiary hearing; but, was not ordered until 'four days' before the hearing. Petitioner still has not benefited from the use of the allergin, although a full week has passed since the hearing; and, Petitioner believes the only reason it was ordered at all was to offset the motion filed by the Petitioner.

## XIV

"Petitioner further objects and excepts to the Report, and especially that portion which states:

"In determining the merit of claims of lack of medical treatment, the standard is whether *needed*-as opposed to *desirable*-medical treatment is being denied, . . . . or whether there is obvious neglect or intentional mistreatment. . . . Clearly this is not the case. Peti-

tioner has been given a thorough and an appropriate, promising course of treatment is planned.' (cases ommitted (sic))

#### A

"Petitioner submits that what is *needed* is immediate medical relief, which can only be brought about by immediate transfer to a dry climate. Petitioner further submits that the prison officials have been cognizant of avenues of treatment since September of 1972, they were again given avenues of treatment in the spring of 1973, and again in October of 1973; but, to date Petitioner has not received the benifit (sic) of any medical treatment. That is *obvious neglect!* Petitioner has no faith in a 'promising course of treatment' as it does not offer the immediate relief he believes he is entitled to.

#### XV

"Petitioner further objects and excepts to the Report in that it assumes that Petitioner's treatment team did not act arbitrarily and capriciously. If their actions were anything else, then they would have at least have inquired with some institutions located in a dry climate. To construe the 'ordinary course of action for the Medical Center' when the circumstances are not 'ordinary' as a 'rational, factual basis for the actions taken by the prison authorities' is to ignore completely the recommendations of three *medical doctors.*

#### XVI

"Petitioner further objects and excepts to the Report, and especially that portion that refers to:

'the good faith of prison administrators'

#### A

"To date Petitioner has endured over twenty months of 'good faith' and would bè more than happy to trade all of the 'good faith' he has acquired for a little medical relief."

The basic contentions raised in petitioner's *pro se* exceptions were generally presented in the preliminary processing proceedings before the Magistrate. A contention which was not presented to the Magistrate is petitioner's assertion that the Magistrate is without the "authority and jurisdiction" under Local Rule 26 to process the petition herein and hold a preliminary evidentiary hearing in respect thereto. In support thereof, petitioner cites the Sixth Circuit case of Wedding v. Wingo, 483 F.2d 1131 (6th Cir. 1973), cert. granted, 414 U.S. 1157, 94 S.Ct. 914, 39 L.Ed.2d 109 (1974).

In the *Wedding* case, the Court of Appeals considered a local rule of the United States District Court for the Western District of Kentucky which empowered the United States Magistrate to hold evidentiary hearings and electronically record them in respect to habeas corpus proceedings. However, the challenged local rule in the *Wedding* case provided that, upon the written request of either party, the district judge ". . . shall proceed to hear the recording of the testimony given at the evidentiary hearing and give it de novo consideration." Wedding v. Wingo, *supra* at 1133.

In contrast to the local rule challenged in the *Wedding* case, Section B.1.b.(5) of Local Rule 26 of this Court provides that *de novo* review shall be provided upon the filing of exceptions to any proposed material finding of fact.

This Court has most recently concluded that the Magistrate is legally empowered to conduct preliminary evidentiary hearings in respect to the preliminary processing of habeas corpus petitions, and that Section B.1.b.(5) of Local Rule 26 is consistent with the provisions of Sections 636(b)(2) and 636(b)(3), Title 28, United States Code. Proffitt v. Ciccone, 371 F.Supp. 282 (W.D.Mo. December 29, 1973); *see also,* United States v. Zelker, 477 F.2d 797 (2d Cir. 1973); Parnell v. Wainwright, 464 F.2d 735 (5th Cir. 1972); Johnson v. Wainwright, 456 F.2d 1200 (5th Cir. 1972).

In a most recent decision of the United States Court of Appeals for the Eighth Circuit in the case of Noorlander v. Ciccone, 489 F.2d 642 (8th Cir. 1973), the Court stated as follows in respect to the viability of the *Wedding* case:

"... We do question *Wedding* insofar as it states in dicta that magistrates are prohibited from holding any evidentiary hearings in habeas corpus matters. To summarize, we do not believe the statute prohibits magistrates from holding hearings in habeas corpus matters if a full opportunity is given for a de novo hearing before an Article III judge in the event that a dispute as to a material issue of fact develops during the course of a hearing and if the final decision-making power is retained in the court."

Specifically referring to Local Rule 26 of this Court, the Court of Appeals concluded as follows:

"We are convinced that no constitutional provisions are violated by permitting magistrates to conduct preliminary evidentiary hearings in habeas corpus matters provided, of course, that the judge retains and *exercises* the decision-making power with respect to the law and the facts. Rule 26 reserves these powers to the court, with the exceptions hereinafter noted. The rule provides the court with a convenient, quick and efficient method of sorting out the legal and factual issues. It goes further than some rules in giving the magistrate the right to conduct evidentiary hearings, but the hearings are essentially preliminary in nature and designed to assist the trial court in reaching an early and proper result. The rule does not confer the judicial power of the United States to decide cases on someone other than an Article III judge." (Emphasis in original.)

Petitioner's objections to the authority of this Court to delegate preliminary processing powers to the United States Magistrate (at Springfield, Missouri, and elsewhere) are without a basis in fact or law.

Petitioner was accorded a plenary evidentiary hearing on the other contentions raised herein on December 12, 1973, during which petitioner, James M. Fraser, M.D., a qualified and licensed physician on the Medical Center medical staff, and Judson Hughes, petitioner's case manager at the Medical Center, all testified under oath. Based on the evidence adduced at that hearing, the United States Magistrate made proposed findings of fact and concluded that petitioner had not been denied any federal rights.

■ In his excellent report and recommendation, the United States Magistrate correctly states that in determining the merits of a claim for lack of medical treatment, the standard is whether needed, or essential, as opposed to desirable, medical treatment is being denied. Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973); Ramsey v. Ciccone, 310 F.Supp. 600 (W.D.Mo.1970); Reynolds v. Swenson, 313 F.Supp. 328 (W.D.Mo.1970). The Magistrate further correctly states that "... [a]bsent the denial of a federal right or other exceptional circumstances, neither the treatment of petitioner, Harris v. Settle, 322 F.2d 908 (8th Cir. 1963); Austin v. Harris, 226 F.Supp. 304 (W.D.Mo.1964), nor the place of his confinement is subject to judicial review. Van Sirrs v. Ciccone, 437 F.2d 884 (8th Cir. 1971); Sutton v. Ciccone, 292 F.Supp. 374 (W.D.Mo.1968)."

An examination of the comprehensive and precise findings of fact of the Magistrate discloses that the Magistrate treated this petition as presenting a new question of law, not previously decided in any other case. The facts were stated so that relief could be granted to petitioner, without remand, if this Court desired to hold that the petitioner is entitled to relief by further developing the legal standards governing the duties of the respondent (in his official capacity as agent of the Attorney General). This possible course of action anticipated by the Magistrate will be followed.

■ Under the undisputed facts it is found that the petitioner is in need of medical care for treatment of his chronic rhinitis caused by allergic sensitivity to an identified mold. In these circumstances the respondent and the Bureau of Prisons are legally obligated to provide available medical treatment of a type approved by recognized medical authority.

■ The new question in this is the nature of the treatment which must be provided. The judicial answer to this question is that it must be the most suitable medical treatment reasonably available. In this case the uncontroverted facts establish that the most suitable medical treatment is allergic desensitization in a climate of low humidity. Respondent's experts recognize this but recommend allergic desensitization at the United States Penitentiary at Terre Haute, Indiana, in a climate of relatively high humidity, when there is available at least one prison in the federal system with a climate of relatively low humidity, namely at the Federal Correctional Institution at La Tuna, Texas. Perhaps there are others. One of the reasons given by the respondent for proposing transfer of petitioner to Terre Haute is, as pointed out by the Magistrate, an erroneous legal conclusion.

The primary reason relied upon by petitioners' treatment team for refusing his transfer to La Tuna was that respondent is precluded by the letter of policy statement 7300.13B. That primary reason is not substantiated in fact or in law. As noted by the Magistrate, the "policy statement does not, by its letter, limit admission to La Tuna to prisoners serving five year sentences or less. . . ." Therefore the ". . . policy statement cannot be regarded as preventing respondent from exercising his discretion in this matter." The decision of the treatment team for failing to recommend the transfer of petitioner to a penal institution in the Southwestern United States, based wholly or partly on the above-noted erroneous reason, rendered the decision arbitrary and unreasonable.

Under these circumstances, confining petitioner at Terre Haute, when confinement is equally and reasonably available at least at one other prison where treatment can be given under the least adverse conditions, does not meet the standard of duty required of the respondent and the Attorney General by the continually developing principles of Section 4042, Title 18, U.S.C., and by the Eighth Amendment to the Constitution of the United States forbidding cruel and unusual punishment. For those reasons, exceptional circumstances exist in this action rendering the challenged decision arbitrary and capricious.

In the case at bar, all of the physicians who have had an opportunity to examine and confer with petitioner concur that petitioner's conditions would be benefited by the transfer of petitioner to a relatively dry climate. This form of treatment, which all the physicians acknowledge as being one factor of an appropriate course of treatment for petitioner's malady, has not been shown to be inappropriate or unreasonable. On the contrary, transferring petitioner to a climate of low humidity appears, under the exceptional circumstances of the case at bar, to constitute an essential factor of the best reasonably available medical treatment needed by the petitioner. In other words, transferring petitioner to a dry climate is a substantial element of the total plan of appropriate care needed by the petitioner for reasonable treatment of his condition. Further, the best reasonably available treatment for petitioner's condition would appear to include a transfer to a suitable institution in the Southwestern part of the United States, which is the Federal Correctional Institution at La Tuna, Texas, or some other place of substantially equal low humidity.

Upon a full and careful review of the petitioner's *pro se* exceptions and the report and recommendation of the United States Magistrate, it is hereby concluded

that the exceptions should be sustained and that the petition for a writ of habeas corpus should be granted.

For the foregoing reasons, it is therefore

Ordered that petitioner's exceptions to the report and recommendation of the United States Magistrate be, and they are hereby, sustained. It is further

Ordered and Adjudged that the petition herein for a writ of habeas corpus be, and it is hereby, granted. Respondent is accordingly directed to transfer the petitioner to the Federal Correctional Institution at La Tuna, Texas, or to some other available prison in a climate of substantially equal low humidity, as soon as is reasonably possible, and to further carry out any other acts in his power reasonably required to make certain that the recommended planned medical treatment of petitioner is being carried out at a suitable place.